**In re REQUEST FOR ACCESS TO
GRAND JURY MATERIALS
GRAND JURY NO. 81-1, MIAMI.**

**Appeal of Judge Alcee L. HASTINGS.**

No. 87–5857.

United States Court of Appeals,
Eleventh Circuit.

Nov. 24, 1987.

Terence J. Anderson, Coral Gables, Fla., for appellant Judge Alcee L. Hastings.

Alan I. Baron, Chief Counsel, U.S. House of Representatives, Committee on the Judiciary, Washington, D.C., Jo Ann Farrington, U.S. Dept. of Justice, Public Integrity Section, Crim. Div., Washington, D.C., for appellee.

Before MERRITT [*], JONES [**], and GUY [***], Circuit Judges.

MERRITT, Circuit Judge:

This appeal is from an order granting the request of the Committee on the Judiciary of the United States House of Representatives for immediate access to all the confidential records of Grand Jury No. 81–1–GJ (MIA) for use in connection with the Committee's impeachment inquiry concerning United States District Judge Alcee L. Hastings of the Southern District of Florida. Judge Hastings contends that a much greater showing of "particularized need" must be made under Rule 6(e), Fed.R. Crim.P., than would normally be the case for the release of secret grand jury information because disclosure to the legislative branch for purposes of impeachment raises significant separation of powers considerations not present in the usual case. We conclude that the Committee's showing is sufficient and affirm the order of the District Court.

## I.

On December 29, 1981, the Grand Jury, sitting in the Southern District of Florida, returned indictments charging a conspiracy in which William A. Borders, Jr., a friend of Judge Hastings, would act as an intermediary for Hastings in connection with a bribe to fix a federal criminal case and with obstruction of justice to conceal the bribe. Following a jury trial, Borders was convicted on March 29, 1982. Judge Hastings was tried separately and was acquitted by a jury on February 4, 1983. The impeachment inquiry appears to be focused on the same crime considered by the jury and on Judge Hastings' defense to those charges.

On March 17, 1983, two United States District Judges filed a complaint with the Eleventh Circuit requesting an investigation of Judge Hastings pursuant to the Judicial Councils Reform and Judicial Conduct and Disability Act, 28 U.S.C. § 372(c), to determine whether Judge Hastings had engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts.

The Chief Judge of the Eleventh Circuit appointed an Investigating Committee which conducted a three-year investigation. The Investigating Committee sought and obtained the same grand jury materials which are at issue in this case. *See In re Petition to Inspect and Copy Grand Jury Materials,* 735 F.2d 1261 (11th Cir.), *cert. denied,* 469 U.S. 884, 105 S.Ct. 254, 83 L.Ed.2d 191 (1984).

On August 4, 1986, the Investigating Committee submitted its report and recommendations to the Judicial Council of the Eleventh Circuit. On September 2, 1986, the Judicial Council adopted the Investigating Committee's report and determined that "consideration of impeachment [of Judge Hastings] may be warranted."

On March 17, 1987, the Judicial Conference of the United States concurred in the determination of the Judicial Council and transmitted the Investigating Committee's report and records to the Speaker of the House of Representatives. The report and records were referred to the Committee on the Judiciary and an impeachment inquiry was initiated. On March 23, 1987, House Resolution 128 was introduced. The resolution under consideration provides for the impeachment of Judge Hastings for high crimes and misdemeanors. The Judiciary Committee has made public the Investigating Committee's report and supporting documents.

On July 15, 1987, the Honorable Peter Rodino, Chairman of the House Judiciary Committee, wrote a letter to Chief Judge King of the Southern District of Florida requesting that the United States District Court for the Southern District of Florida deliver to the Subcommittee on Criminal

---

[*] Honorable Gilbert S. Merritt, U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

[**] Honorable Nathaniel R. Jones, U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

[***] Honorable Ralph B. Guy, Jr., U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

Justice all of the "records, transcripts, minutes and exhibits" of the grand jury that indicted Judge Hastings. Rodino's letter stated that a full review of the complete record of the grand jury was essential in order for the House impeachment inquiry to be complete and "reach the degree of thoroughness necessary to ensure public confidence that justice had been done...."

Although Congressman Rodino's letter did not contain an in-depth analysis of why the Committee believed it was entitled to the grand jury records, it did note that grand jury material was disclosed to the Committee during the Nixon impeachment inquiry. *See In re Report and Recommendation of June 5, 1972 Grand Jury Concerning Transmission of Evidence to the House of Representatives*, 370 F.Supp. 1219 (D.D.C.), *mandamus denied sub nom. Haldeman v. Sirica*, 501 F.2d 714 (D.C.Cir.1974).

On August 5, 1987, Chief Judge King issued a sealed order giving the Judiciary Committee access to the requested grand jury materials. (App., p. 13.)

On August 10, 1987, Judge Hastings filed an emergency motion to stay Judge King's order and to unseal it. He also requested that the court grant him access to the grand jury materials and that the grand jury materials be made public, excepting such material as may be determined should remain secret to protect significant interests of persons not involved in the present dispute.

After Judge King and the other judges of the District recused themselves, the emergency motion was heard by Senior Circuit Judge John D. Butzner, Jr. of the Fourth Circuit, sitting by designation. Judge Butzner held that (1) the Judiciary Committee is entitled to the materials; (2) Judge Hastings' access to the materials should be determined by Congress, since control over the timing and extent of dis-

covery in impeachment proceedings is ancillary to the impeachment power that the Constitution vests in Congress; and (3) that no need for public disclosure exists sufficient to justify an exception to the general rule of grand jury secrecy mandated by Fed.R.Crim.P. 6(e)(2). (App., p. 164) Judge Hastings now appeals the first of these rulings concerning the release of the grand jury materials.[1] This panel of judges from the United States Court of Appeals for the Sixth Circuit was assigned to hear the appeal by designation after the judges of the Eleventh Circuit recused themselves because they had participated in the investigation of Judge Hastings.

We consider the Committee's request within the framework of Fed.R.Crim.P. 6(e), which codifies the traditional general rule of grand jury secrecy and sets out several exceptions to it. The only exception arguably applicable to the Committee request is subsection 6(e)(3)(C)(i), which authorizes disclosure "when so directed by a court preliminarily to or in connection with a judicial proceeding." Rule 6(e)(2) states a general rule of grand jury secrecy, while 6(e)(3) provides the following exception:

(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

(i) when so directed by a court preliminarily to or in connection with a judicial proceeding;

. . . .

If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time, and under such conditions as the court may direct.

Judge Butzner below held, and the parties agree, that within the meaning of the rule a Senate impeachment trial qualifies as a "judicial proceeding" and that a House impeachment inquiry is "preliminary to" the Senate trial. We therefore do not have

---

**1.** Although Judge Hastings' briefs and papers on appeal can be read as presenting on appeal the issue of disclosure to him and to the public, his counsel at oral argument made clear that these issues were not being pursued and, to the extent they were presented in his papers, were withdrawn. We therefore need not address the part

of Judge Butzner's opinion that states that Judge Hastings must first seek disclosure of the material from the Committee. Rather than seek disclosure from the Committee, Judge Hastings may of course seek disclosure from the District Court under Rule 6(e) on the basis of particularized need.

before us an issue concerning the interpretation of this language of § 6(e)(3)(C)(i).

## II.

■ The decisive question before us is whether the Committee on the Judiciary has made a showing of particularized need sufficient to warrant disclosure of the grand jury materials requested. The leading case describing the showing that a party seeking grand jury transcripts under Rule 6(e) must make is *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979). Under *Douglas Oil*, parties seeking grand jury transcripts must show (1) that the material they seek is needed to avoid a possible injustice in another judicial proceeding, (2) that the need for disclosure is greater than the need for continued secrecy, and (3) that their request is structured to cover only material so needed. 441 U.S. at 222, 99 S.Ct. at 1674. The *Douglas Oil* standard applies to both governmental bodies and private litigants, but the interests that underlie the policy of grand jury secrecy are affected to a lesser extent when disclosure to a governmental body is requested. *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 445, 103 S.Ct. 3133, 3149, 77 L.Ed.2d 743 (1983) ("Nothing in *Douglas Oil*, however, requires a district court to pretend that there are no differences between governmental bodies and private parties.")

In determining whether the Committee on the Judiciary has met the "particularized need" standard, we are thus not foreclosed from examining considerations which are peculiar to the Committee as a government movant. The standard for government movants remains one of particularized need, but under this standard we may weigh the public interest served by disclosure. *Illinois v. Abbott & Assoc., Inc.*, 460 U.S. 557, 568 n. 15, 103 S.Ct. 1356, 1361 n. 15, 75 L.Ed.2d 281 (1983).

The interests underlying the principle of grand jury secrecy were enunciated earlier by the Supreme Court in *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681 n.

6, 78 S.Ct. 983, 986 n. 6, 2 L.Ed.2d 1077 (1958):

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosure by persons who have information with respect to the commission of crimes; (5) to protect [the] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

The only one of these policy considerations affected by disclosure to the Committee is the encouragement of free and untrammeled disclosures by persons who have information with respect to the commission of crimes. Grand Jury 81-1 (MIA) has ended its activities, thus reducing the need for secrecy. *See Douglas Oil*, 441 U.S. at 222, 99 S.Ct. at 1674.

Although the need for secrecy is less compelling in view of the termination of the grand jury, some secrecy interests remain. Persons who testified before the grand jury did so with the expectation that their testimony would remain secret. Additionally, persons called upon to testify before future grand juries will also consider the likelihood that their testimony may one day be disclosed to outside parties. Persons who are not persuaded that their testimony, or even the fact that they testified, will remain secret may be deterred from testifying. Although these interests are always present and a source of legitimate concern, they are not as compelling in this case as in some other cases involving grand jury secrecy. Judge Hastings has not directed this Court's attention to any specific harm that would result from disclosure of the grand jury records to the Committee; the Department of Justice has stated that

it has "no objection" to this disclosure to the Committee.

Disclosure is appropriate only in those cases in which the need for disclosure outweighs the interest in secrecy. *Douglas Oil,* 441 U.S. at 223, 99 S.Ct. at 1675. As the considerations justifying secrecy become less relevant, the burden of showing the need for disclosure is lessened. *Id; see also United States v. Socony–Vacuum Oil Co.,* 310 U.S. 150, 234, 60 S.Ct. 811, 849, 84 L.Ed.1129 (1940) ("[A]fter the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it."). However, a lessening of the burden is not an elimination of the burden. The Committee must assert a particularized need for the grand jury records.

The Committee has asserted a particularized need sufficient to warrant disclosure in this case. The Committee has asserted an interest in conducting a full and fair impeachment inquiry. The Committee's need for grand jury material, which may contain the freshest recollections of some of the key witnesses to the events being investigated by the grand jury, is particularly compelling in this inquiry, since the events which are the subject of the impeachment inquiry took place almost seven years ago.

### III.

 Judge Hastings argues in response that whatever "flexible" [2] showing of particularized need may be normally required by rule 6(e) under the *Douglas Oil* test, that showing must be different and much stronger in this case because disclosure here upon the request of another coordinate branch constitutes an "inter-branch transfer" and thus should be closely scrutinized under a separation of powers analysis. He argues that disclosure here creates the potential for abuse of power by the executive branch by making the executive

branch, and perhaps the judicial branch, an arm of the legislative branch in the impeachment process. He argues that disclosure allows an overlapping or mixing of the legislative impeachment powers with the executive power to enforce the law. It also mixes the impeachment power with the judicial power to conduct grand jury investigations. Disclosure allows, in Judge Hastings' view, members of the executive and judicial branches to abuse their legitimate functions by exercising in part the impeachment function vested exclusively in Congress by the Constitution. Judge Hastings argues that disclosure here creates an incentive for the executive and judicial branches to investigate and harass officials in order to aid in their impeachment.

In Judge Hastings' view, the executive branch abused the grand jury process and, frustrated by his acquittal, is now seeking to reuse the grand jury materials to impermissibly influence the actions of the legislative branch in an effort to oust a politically undesirable member of the judicial branch. He thus alleges an intrusion by the Executive upon the Judiciary and an intrusion by both the Executive and the Judiciary upon the Legislative.

This argument that a stronger or more strict showing of "particularized need" is *per se* required in impeachment cases does not take into account the built-in protections inherent in the separation of powers.

The unique nature of our constitutional system of separation of powers established in the original Constitution of 1789 arises from the conscious effort of its framers to preserve constitutional liberty through a complex self-correcting process. As one of *The Federalist* authors wrote, the founders provided the ultimate guarantee against overreaching by any of the three branches "by so contriving the interior structure of the government as that its general consti-

---

**2.** The *Douglas Oil* standard is a highly flexible one, adaptable to different circumstances and sensitive to the fact that the requirements of secrecy are greater in some situations than in others. Hence, although [*Illinois v.*] *Abbott* and the legislative history foreclose any special dispensation from the *Douglas Oil* stan-

dard for Government agencies, the standard itself accommodates any relevant considerations, peculiar to Government movants, that weigh for or against disclosure in a given case.

*Sells,* 463 U.S. at 445, 103 S.Ct. at 3149.

tutent parts may, by their mutual relations, be the means of keeping each other in their proper places.... Ambition must be made to counteract ambition." *The Federalist* No. 51 at 336–37. (A. Hamilton or J. Madison) (Modern Library ed.).

This concept reflects Montesquieu's division and allocation of the powers of government in three separate branches so that democracy or "the power of the people [will not be] confounded with their liberty": "Democratic ... states are not in their own nature free" because "constant experience shows us that every man invested with power is apt to abuse it, and to carry his authority as far as it will go." Thus, "[t]o prevent this abuse, it is necessary from the very nature of things that power should be a check to power." Montesquieu, *The Spirit of the Laws*, bk. 11, chs. 2, 4 at 150 (Hafner ed. 1949, translated by Thomas Nugent) (first published in 1748).

After proposing the division of government in three branches, Montesquieu explained how the impeachment process carries out his objectives. It is a check on the other two branches:

> It might also happen that a subject intrusted with the administration of public affairs may infringe the rights of the people, and be guilty of crimes.... But, in general, the legislative power cannot try causes: and much less can it try this particular case, where it represents the party aggrieved, which is the people. It can only, therefore, impeach. But before what court shall it bring its impeachment? Must it go and demean itself before the ordinary tribunals ...? No: in order to preserve the dignity of the people and the security of the subject, the legislative part which represents the people [in our Republic, the House] must bring in its charge before the legislative part which represents the nobility [in our Republic, the States represented by the Senate], who have neither the same interests nor the same passions.

*Id.*, bk. 11, ch. 6 at 159.

One of the very purposes of an independent House impeachment inquiry is to determine whether impeachment is warrant-ed. The power to impeach is the "awful discretion ... to doom to honor or to infamy." *The Federalist* No. 65 at 426 (A. Hamilton) (Modern Library ed.). If, as Judge Hastings asserts, the Executive or the Judiciary or both are engaged in a vendetta against him in connection with the operation of the grand jury, his ultimate protection is to be found in the constitutional commitment of the sole power of impeachment to the House and of the trial of impeachments to the Senate, "who," in Montesquieu's words, "have neither the same interests nor the same passions." The independent check of the two Houses provides the remedy for possible abuse by the other two branches.

## IV.

Under proper separation of powers analysis, we "must balance the constitutional weight of the interest to be served against the danger of intrusion on the authority and functions of the [judicial] branch." *Nixon v. Fitzgerald*, 457 U.S. 731, 754, 102 S.Ct. 2690, 2703, 73 L.Ed.2d 349 (1982). *See United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *see generally* Note, *Separation of Powers and Judicial Service on Presidential Commissions*, 53 U.Chi.L.Rev. 993, 1004–11 (1986). The policy of grand jury secrecy, whether viewed as a deeply-rooted tradition of the common law or as itself implicit in the Fifth Amendment guarantee of indictment for "infamous crime," is nonetheless a generalized one. The balancing that must take place is between the specific need of the Committee for material necessary to its constitutionally empowered task of impeachment in *this* case versus the specific secrecy interests that remain in *these* grand jury materials.

The issue is whether action by the legislative branch in pursuance of its lawful authority has the potential to prevent the judicial branch from "accomplishing its constitutionally assigned functions" of protecting grand jury secrecy. *Nixon v. Administrator of General Services*, 433 U.S. 425, 443, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977). Where the potential for disruption

of the judicial function is present, we must "determine whether that impact is justified by an overriding need to promote objectives within the constitutional authority of Congress." *Id.*

As noted above, neither Judge Hastings, nor the Department of Justice, nor any other person has articulated to this Court any specific interest in secrecy in these materials.

Thus, applying the requirements of rule 6(e) in this context, we hold, taking into account the doctrine of separation of powers, that a merely generalized assertion of secrecy in grand jury materials must yield to a demonstrated, specific need for evidence in a pending impeachment investigation. This conclusion is strengthened all the more when the "invading" branch acts to "serve broad public interests— ... not in derogation of the separation of powers but to maintain their proper balance, ... or to vindicate the public interest in an ongoing [investigation]." *Nixon v. Fitzgerald,* 457 U.S. at 754, 102 S.Ct. at 2703 (citing *Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153 (1952) (*Steel Seizure* case)).

An additional reason for disclosing the grand jury materials to the Committee under rule 6(e) is found in the principles of comity that inform the relationships between the branches of government. Under a proper conception of the separation of powers, there should be a degree of cooperation between the legislative and judicial branches. The Constitution does not contemplate silence, or hostility, or a total separation of authority among the three branches of government. Instead, the framers contemplated a dynamic interaction among the branches, in which a system of checks and balances serves to prevent overreaching by any one branch. *See Nixon v. Administrator of General Services,* 433 U.S. at 442–43, 97 S.Ct. at 2789–90 (citing *Steel Seizure* case, 343 U.S. at 635, 72 S.Ct. at 870 (Jackson, J., concurring), and *The Federalist* No. 47 (J. Madison)).

Judge Hastings' argument is not based on the dispersion and sharing of power envisioned by the framers and by Montes-

quieu. It is based on a strict tripartite division of governmental territory unconnected by bridges, roads, rail, or any other means of intercourse. The framers did not contemplate that the branches would communicate by smoke signals from distant mountain tops. Rather, a number of functions were mixed between the legislative and the executive, *e.g.*, the war power, the treaty power, the appointive power, the budgetary process, the spending power. In all of these areas of government, the two branches check each other and there must be cooperation if government is to function.

Judge Hastings' absolutist argument for strict separation is particularly inappropriate with respect to the function of grand juries. A mixing of functions and the need for intercourse between the executive and the judicial branch is clearly present in the operation of grand juries. The grand jury as an institution has one foot in the judicial branch and the other in the executive. The judicial branch has certain functions in instructing and controlling grand juries, and the executive submits evidence and makes recommendations to the grand jury. The two branches check each other in the enforcement of our system of criminal justice and thereby deter in part the possible abuse of power in the investigation and charging of criminal offenses. As in other areas where the framers allocated a function or institution to two branches of government, a high degree of cooperation is needed if the system is to function.

A prior instance of the type of cooperation contemplated by principles of interbranch comity is the cooperation extended to the judiciary by the House in litigation stemming from the Watergate scandal. In 1974, the District Court for the District of Columbia, in connection with the criminal prosecution of former Attorney General John W. Mitchell, subpoenaed certain evidence gathered by the Committee on the Judiciary in its inquiry into the impeachment of President Richard M. Nixon. The House adopted a resolution granting such access to the evidence as would not violate the privileges or constitutional powers of the House. *See 3 Deschler's Precedents of*

*the U.S. House of Representatives*, ch. 14, § 6.13. Although in the instant case the Committee requested rather than subpoenaed records, this Court should grant such access to the House as will not violate our privileges or constitutional powers. Deference to principles of comity does not entail simply giving the House any materials it requests. Comity is, however, a factor to be weighed in favor of disclosure when making the Rule 6(e) analysis.

The Committee asserts in its brief that "without full access to the grand jury materials, the public may not have confidence that the Congress considered all relevant evidence. To deny access to these materials would be nothing short of denying Congress—and the public—the right to information that may shed light on the truth." Public confidence in a procedure as political and public as impeachment is an important consideration justifying disclosure.

### V.

■ Judge Hastings also argues that the House's request is too broad. While requests for grand jury disclosure usually are limited to the testimony of specific witnesses, the Committee's request for disclosure of the entire grand jury record is appropriate in this case.

A unique aspect of the Committee's inquiry is its undertaking of what is essentially a *de novo* review of facts which have already been the subject of more traditional judicial proceedings. In order to conduct a full and fair investigation, the Committee needs to have access to all of the evidence which is available. The recommendation of the judicial branch concerning impeachment of Judge Hastings was based on access to the whole grand jury record, and that same access should not be denied Congress.

Judge Hastings argues that the Committee must rely on the report and record forwarded to it by the Judicial Conference unless it can show that the report and record are insufficient. This argument misapprehends the relationship between the Judicial Conference and the House of Representatives. Although the Judicial Councils Reform and Judicial Conduct and Disability Act provides for the transmission of the Judicial Conference's report and determination that impeachment may be warranted to the House of Representatives, it in no way limits the investigatory power of the House in impeachment proceedings. Such a holding would clearly violate separation of powers principles.

■ Judge Hastings also argues that the order granted disclosure to too many people. Judge King's order noted that the Committee intended to receive the materials in executive session "in accordance with the confidentiality procedures agreement attached hereto...." (App., p. 13). The confidentiality procedures provide for access by "Members of Congress." Judge Hastings contends that members of the Senate are not within the class of persons to whom disclosure could properly be approved in connection with an impeachment inquiry. He also contends that allowing senators to have access to the materials conflicts with the separation of the impeachment and removal powers between the House and the Senate, as well as undermining his interest in preserving his right to a fair trial in the Senate.

Our response to this argument is that by this order we grant disclosure only to the body that made the request: namely, the House of Representatives. The Constitution assigns the House and Senate separate functions and powers in the impeachment and removal process. The House holds the sole power of impeachment.[3] It also holds investigative powers that are ancillary to its impeachment power. Only the House may decide whether to investigate, impeach, and prosecute public officials upon allegations that they have committed high crimes or misdemeanors in office. These powers are in the sole domain of the House

---

**3.** U.S. Const. Art. I, § 2, cl. 5 provides in part: The House of Representatives ... shall have the sole Power of Impeachment.

and are not shared with or exercised by the Senate.

The Senate, on the other hand, holds the sole power to try impeachments and to order removal from office upon conviction. If the House approves and transmits articles of impeachment, the Senate must exercise its judicial power and convene as a court of impeachment. The Senate must then sit as judges and jurors to hear such evidence as is admissible and arguments as are made to decide the case.[4]

In seeking disclosure of the grand jury record, the Committee on the Judiciary based its request upon the investigative powers that the House holds ancillary to its power of impeachment. This court should not grant disclosure of the grand jury materials to persons other than those covered by this power. Because the sole discretion to decide whether articles of impeachment are to be approved lies with the House, the Senate has no constitutional role in that decision. The Senate has not requested disclosure, and our order is limited to the House.

█ The argument that our order should specifically require the Judiciary Committee to adopt confidentiality procedures that deny senators access to the materials is without merit. Judge Hastings acknowledges that once the materials are disclosed, the court cannot enforce the Committee's confidentiality procedures. Thus, even assuming that the court could withhold disclosure until procedures were adopted which limited access, Congress would be free to amend or abandon the procedures at any time.

We do not read the District Court opinion either to have imposed or not imposed confidentiality strictures upon the Committee. Judge Butzner's order expressly declined to place limitations upon the Committee. Judge King's order, which Judge Butzner refused to stay, merely took note that the

Committee had advised the court that it intended to "receive the requested grand jury materials in executive session in accordance with the confidentiality procedures agreement." What we must decide is simply whether to disclose the materials to the Judiciary Committee; what the Committee does *after* disclosure is outside of our jurisdiction. The reason for this conclusion is basic; as stated above, the sole power of impeachment is vested in the House. The Speech and Debate Clause prevents us from questioning Congress about actions taken in the impeachment process. The Speech and Debate Clause prevents us from questioning Congress about actions taken in the impeachment process. The Speech and Debate Clause is applicable because impeachment is viewed as a legislative activity in the sense that it is one of the "other matters which the Constitution places within the jurisdiction of either House." *Gravel v. United States*, 408 U.S. 606, 625, 92 S.Ct. 2614, 2627, 33 L.Ed.2d 583 (1972) (defining legislative activity).

Finally, we reemphasize that our decision affirming the District Court's finding that the House has shown a "particularized need" for the grand jury records does not carry us into the area reserved to the House by the Constitution. This disposition is not an expression of the propriety or impropriety of an impeachment. Such a decision is within the exclusive province of the House and the Senate.

In accordance with the above reasoning, the decision of the District Court is AFFIRMED.

GUY, Circuit Judge, concurring in part and dissenting in part:

I agree with the substantive conclusions reached by the court but write additionally to address certain procedural problems which are capable of repetition.[1] The Com-

---

4. U.S. Const. Art. I, § 3, cl. 6 provides in part:
 The Senate shall have the sole Power to try all Impeachments. When sitting for that Purpose, they shall be on Oath or Affirmation.... And no Person shall be convicted without the

 Concurrence of two thirds of the Members present.

1. The House Judiciary Committee has already requested additional grand jury materials over and above those that are the subject of this appeal.

mittee on the Judiciary of the United States House of Representatives (Committee) advanced three theories under which it was entitled to receive and the court was entitled to release requested grand jury materials: (1) the constitutional impeachment power of the House, (2) the inherent supervisory power of the district court over grand juries, and (3) Fed.R.Crim.P. 6(e)(3)(C)(i).[2] We have elected to address the request only in terms of Rule 6(e)(3)(C)(i) (hereinafter (C)(i)). This is particularly appropriate since the parties do not argue that this section is inapplicable and it enables us to reach a decision without the exploration of more nebulous constitutional and "inherent power" grounds.

I would suggest that (C)(i) petitions require initially and on review a three-step analysis. First, is this an appropriate circumstance for a (C)(i) request? This is a legal conclusion and is reviewed *de novo*. Second, if there is a proper (C)(i) request from a procedural standpoint, has there been the requisite showing of particularized need? This would normally be a mixed question of law and fact and would be reviewable *de novo*. Third, in the grant or denial of the request, was discretion properly exercised? This latter decision is reviewed on an abuse of discretion standard. When this suggested analysis is applied here, it results in my reaching the following conclusions.

Although the Committee simply sent a letter asking for the grand jury materials, that letter is properly construed as a petition seeking (C)(i) disclosure. Under Rule 6(e)(3)(D), when such a petition is filed, the proceeding may only be ex parte if the government is the petitioner.[3] Although the Committee is part of government in a broad sense, it is more logical to conclude that the "government" referred to in Rule 6(e)(3)(D) refers to the government as defined in Fed.R.Crim.P. 54(c).[4] Thus, when the district court originally proceeded ex parte, it was in error as notice should have been given to the "attorney for the government" and "the parties to the judicial proceeding," which in this case is Judge Hastings. I would conclude any error was harmless, however, for the following reasons: (1) the court did notify the government and Judge Hastings of the entry of its order before any materials were actually released; (2) the government does not object to disclosure; and (3) Judge Hastings, by filing a stay motion and appeal, has had an opportunity to be heard in the district court and on appeal. Thus, the district court correctly concluded that this was an appropriate circumstance to consider a (C)(i) request.

Judge Merritt has dealt fully with the particularized need issue and nothing further need be said.

The last inquiry in the suggested three-part analysis concerns whether the court properly exercised its discretion in the order of release it issued. Although in different cases the focus of this inquiry will vary, in this case the only question raised concerns the propriety of allowing the Senate to have access to the grand jury materials at this time. On this issue, I part company with the majority's analysis, although it would appear that little differ-

---

**2.** Rule 6(e)(3)(C)(i) reads as follows:

(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

(i) when so directed by a court preliminarily to or in connection with a judicial proceeding; ....

**3.** Rule 6(e)(3)(D) reads as follows:

(D) A petition for disclosure pursuant to subdivision (e)(3)(C)(i) shall be filed in the district where the grand jury convened. Unless the hearing is ex parte, which it may be when the petitioner is the government, the petitioner shall serve written notice of the petition upon (i) the attorney for the government, (ii) the parties to the judicial proceed-

ing if disclosure is sought in connection with such a proceeding, and (iii) such other persons as the court may direct. The court shall afford those persons a reasonable opportunity to appear and be heard.

**4.** Fed.R.Crim.P. 54(c) reads in pertinent part as follows:

(c) **Application of Terms.** As used in these rules the following terms have the designated meanings.

....

"Attorney for the government" means the Attorney General, an authorized assistant of the Attorney General, a United States Attorney, an authorized assistant of the United States Attorney,....

ence in result is likely. The majority indicates that the material may only be given to the Committee but acknowledges the Committee can then do with it as they see fit.

I have no quarrel with this conclusion, and were I exercising discretion as a trial judge, I would have done as the majority suggests. However, I cannot conclude that the district court *under these circumstances* abused its discretion by allowing the materials to be released in accordance with the Committee's confidentiality rules. Given that this all occurs long after the grand jury has finished its work, the criminal trial has concluded, and the Committee has already made *public* a synopsis of the grand jury proceedings, I cannot say the district court abused its discretion in allowing initially what the majority concludes can happen anyway. It seems to me that the majority has merely substituted its discretion for that of the district court.

Finally, on the discretion issue, I would emphasize that it is still within the district court's discretion to deal with other (C)(i) disclosure requests. All the district court did here was to turn a copy of the grand jury materials over to the Committee. The district court is still the custodian of the official record of the grand jury, and thus it is to the district court that Judge Hastings initially should make his showing of particularized need if he seeks a copy of the grand jury record.