In re **GRAND JURY PROCEEDINGS.**

**Appeal of Judge Alcee L. HASTINGS.**

**No. 87–6070.**

United States Court of Appeals, Eleventh Circuit.

March 14, 1988.

Terence J. Anderson, Coral Gables, Fla., Patricia Williams, Tampa, Fla., Robert S. Catz, Cleveland, Ohio, William G. McClain, John W. Karr, Washington, D.C., for appellant.

Alan I. Baron, Sp. Counsel, U.S. House of Representatives, Committee on the Judiciary, Jo Ann Farrington, U.S. Dept. of Justice, Public Integrity Section, Crim. Div., Washington, D.C., for appellee.

Before MERRITT, JONES and GUY, Circuit Judges.*

RALPH B. GUY, Jr., Circuit Judge:

On March 23, 1987, House of Representatives Resolution 128 was introduced providing for the impeachment of Alcee L. Hastings, Judge of the United States District Court for the Southern District of Florida. This resolution was referred to the House Judiciary Committee (Committee) which promptly began an investigation. As part of this investigation, the Committee requested by letter all of the "records, transcripts, minutes, and exhibits" of the grand jury that had previously indicted Judge Hastings. This letter was addressed to the Chief Judge of the Southern District of Florida where the indictment and subsequent prosecution of Judge Hastings had occurred. Judge Hastings filed proceedings in an unsuccessful attempt to stop the release of the requested materials. *In re Request for Access to Grand Jury Materials, Grand Jury No. 81–1 (Miami),* 833 F.2d 1438 (11th Cir.1987)[1] (*Hastings I*).[2]

Subsequent to the filing of the original complaint of judicial misconduct against Judge Hastings, but prior to the adoption of House Resolution 128, the United States Department of Justice filed a new complaint of judicial misconduct against Judge Hastings pursuant to the Judicial Councils Reform and Judicial Conduct and Disability Act, 28 U.S.C. § 372(c). The thrust of the

---

* Honorable Gilbert S. Merritt, Honorable Nathaniel R. Jones, and Honorable Ralph B. Guy, Jr., U.S. Circuit Judges for the Sixth Circuit, sitting by designation.

1. Due to the disqualification of the judges of the Court of Appeals for the Eleventh Circuit in which Judge Hastings sits, this panel was designated by Chief Justice Rehnquist to hear these appeals.

2. *Hastings I* is a misnomer of sorts since the investigation of Judge Hastings' conduct has generated several other cases. *Hastings I* is closely related in many respects to this appeal and the facts, findings, and legal conclusions contained therein will be referenced rather than repeated.

complaint was that Judge Hastings may have improperly disclosed information he received as a result of his authorization of an electronic surveillance undertaken pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520 (1968) (hereinafter Title III). Judge Hastings initially authorized this electronic surveillance on July 15, 1985, as part of an undercover investigation of the Miami local of the International Longshoremen's Association. During the course of the surveillance, which ran until September 14, 1985, Judge Hastings received progress reports from the FBI and issued certain orders. One of the progress reports reviewed by Judge Hastings in August, 1985, alluded to statements suggesting that Steven Clark, Mayor of Dade County, Florida, may have been assisting in a scheme to secure improper zoning variances.

Subsequent to the submission of those progress reports, a conversation was monitored in which one of the speakers stated that Mayor Clark had reported that Judge Hastings had warned the mayor not to associate with certain persons who were "hot" or "had problems." Efforts were made by law enforcement officials to determine whether Judge Hastings had in fact disclosed information learned from the progress report. During the course of this investigation, Mayor Clark and FBI agent Chris Mazzella testified before the Miami grand jury on or about March 20, 1986. The grand jury in question terminated its investigation in 1986 without returning any indictments.

On September 25, 1987, the Committee, pursuant to its impeachment investigation, sent two letters to the Honorable John D. Butzner, Jr., United States Court of Appeals for the Fourth Circuit, who had been designated as the district judge in *Hastings I* and whose orders we affirmed in that case. The first of these letters requested the above-referenced electronic surveillance materials. Specifically, the Committee requested:

1. The original application and supporting affidavit seeking authorization for the telephone interception described above;

2. All progress reports and requests for extensions of such interceptions;

3. The diary of AUSA Roberto Martinez reflecting contacts with Judge Hastings;

4. Tapes and transcripts where any of the following persons appear: Steven Clark, Kevin "Waxie" Gordon, and Richard Bonehill;

5. Reports of interviews by law enforcement representatives of Clark, Gordon, and Bonehill.

The Committee further requests that the Court authorize former AUSA Roberto Martinez and FBI agents Chris Mazzella and Geoffrey Santini to discuss any information they have concerning Judge Hastings' role in connection with these matters.

The Subcommittee wishes to examine these materials in furtherance of its inquiry as to whether impeachment proceedings are warranted with respect to Judge Hastings. A proposed Order is attached.

Letter from Peter W. Rodino, Jr., Chairman, House Committee on the Judiciary, to the Honorable John D. Butzner, Jr. (Sept. 25, 1987).

The second Committee letter requested that:

the Court make available for inspection and copying the testimony of Steven Clark, Mayor of Dade County and FBI agent Chris Mazzella, and any accompanying exhibits presented to the Grand Jury 86–3 (Miami) with regard to the matters described above. We understand that such testimony was given on March 20, 1986.

The Subcommittee wishes to examine these materials in furtherance of its inquiry as to whether impeachment proceedings are warranted with respect to Judge Hastings. A proposed Order authorizing disclosure of these materials is enclosed.

Letter from Peter W. Rodino, Jr., Chairman, House Committee on the Judiciary, to

the Honorable John D. Butzner, Jr. (Sept. 25, 1987).

By letter dated September 25, 1987, the Department of Justice supported the Committee's requests. Although both of these letter requests were ex parte, Judge Butzner again, as he had done in *Hastings I*, notified Judge Hastings of these requests and gave him an opportunity to be heard.[3]

With minor exceptions not here relevant, Judge Butzner granted all of the Committee's requests. Although Judge Butzner carefully and at length considered each of Judge Hastings' contentions, his holding can be briefly summarized. On the electronic surveillance issues, he concluded that Judge Hastings had no standing and, even if he did, Title III authorizes disclosure under these circumstances. On the grand jury issue, Judge Butzner rejected the contention that since the grand jury grew out of the Title III proceedings, the Committee should not have access to them since, consistent with Judge Hastings' contentions, it should not have access to Title III materials. Judge Butzner also found that the Committee had demonstrated a particularized need for disclosure sufficient to satisfy Fed.R.Crim.P. 6(e).[4]

On appeal, Judge Hastings challenges the correctness of all of the district court's rulings. After careful consideration of the record and the arguments made on appeal, we conclude that the materials requested should be disclosed to the Committee and affirm.

## I.

### THE GRAND JURY ISSUE

■ In *Hastings I*, a considerable portion of Judge Merritt's opinion was devoted to a discussion of the "particularized need" required to satisfy of Rule 6(e). We find that the discussion and the conclusion reached in *Hastings I* to be equally applicable here. Although Judge Hastings has attempted to distinguish the two situations, his arguments are unpersuasive. As in *Hastings I*, the grand jury is no longer investigating this matter; much of the substance of what was before the grand jury has already been made public, including references to persons other than Judge Hastings;[5] and the limited material sought is needed in connection with the impeachment inquiry. Thus, the requirements of *Douglas Oil*[6] have been met and the concerns of *Procter and Gamble Co.*[7] are not implicated. We note also, as a factor in performing the balancing required between the need for disclosure and the need for grand jury secrecy, that the Department of Justice supported the request for disclosure.

Since we reject Judge Hastings' arguments as they relate to either Title III taint or disclosure, we similarly reject his argument that the grand jury proceedings should not be disclosed since they grew out of the Title III proceedings.

We also reject Judge Hastings' arguments that these inquiries are beyond the scope of the original impeachment resolution. The Committee has an interest in all materials inculpatory or exculpatory that bear on the question of Judge Hastings' commission of "high crimes and misdemeanors." We find nothing in the resolution which would give it the temporal limitations suggested by Judge Hastings.

## II.

### THE ELECTRONIC SURVEILLANCE MATERIALS

As noted earlier, the district court concluded that Judge Hastings did not have

---

3. The court and the parties did *not* have our opinion in *Hastings I* at the time of this second hearing.

4. Our opinion in *Hastings I* was released on November 24, 1987, and, therefore, was available to Judge Butzner when he issued his opinion on December 2, 1987. As a result, Judge Butzner was able to dispose of some of Judge Hastings' other contentions by general reference to our opinion.

5. Part of the public disclosure is attributable to Judge Hastings himself who referenced these proceedings as part of his arguments in *Hastings I*.

6. *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979).

7. *United States v. Procter and Gamble Co.,* 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958).

standing to contest the Title III disclosures. Notwithstanding this conclusion, the court decided that even if standing were present, the requirements for Title III disclosure have been met. Since we agree with this latter conclusion, we could avoid any discussion of standing because it is not necessary to a resolution of the Title III issue. However, our view of the standing issue differs somewhat from that of the district court; therefore, a brief discussion is warranted.

Judge Hastings constructs a novel argument on the standing issue. He effectively avoids a discussion of his standing under Title III and, instead, concentrates on the issue of standing to challenge the disclosure of grand jury materials. He essentially argues that since this matter ultimately went before a grand jury, the grand jury proceeding somehow subsumes the Title III proceedings and, thus, the only relevant standing inquiry concerns *grand jury* standing. The motivation for making this argument is obvious since *Hastings I* establishes that Judge Hastings does have standing in grand jury disclosure matters and the Committee does not contest this. Although this is an interesting argument, we decline to decide this issue for a number of reasons.

We know from the record that Mayor Clark and FBI agent Chris Mazzella testified before the grand jury; however, we do not have their testimony as part of this record. Nor do we have the exhibits, if any, which may have been presented to the grand jury. Judge Butzner's *in camera* inspection in the district court was limited to the electronic surveillance materials which were under seal and which we have examined in connection with this appeal. In any event, even if we assume all of the electronic surveillance materials were be-

fore the grand jury, Judge Hastings has had his opportunity to argue against grand jury disclosure and did not prevail.[8] *See Hastings I.*

We note in passing that Judge Hastings' argument in this regard is a two-edged sword. Just as *Hastings I* determined that Judge Hastings has standing to object to these grand jury disclosures, it also established that the Committee was a proper party to request disclosure. Since Judge Hastings argues that the Committee is not a proper party to receive or request Title III disclosures, arguably, consistent with Judge Hastings' grand jury theory, the Committee could get, via the grand jury disclosure, what they could not get under Title III.

Turning then to Title III and Judge Hastings' standing, if any, to object to disclosure, we first note that the disclosures provided for under Title III are of two types. Title 18 U.S.C. § 2517(1) (Supp. 1987) provides:

> Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication, or evidence derived therefrom, may disclose such contents to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.

It is important to note that this type of disclosure requires no prior judicial approval.

On the other hand, 18 U.S.C. § 2518(8)(b) provides:

> Applications made and orders granted under this chapter shall be sealed by the

---

**8.** It is unlikely that all of the electronic surveillance materials were before the grand jury since this would have required an order to unseal which does not appear in this record. Agent Mazzella, however, could have disclosed the *contents* of such interceptions to the grand jury pursuant to the provisions of 18 U.S.C. § 2517(3) (Supp.1987), which provide:

> Any person who has received, by any means authorized by this chapter, any information

concerning a wire, oral, or electronic communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof.

judge. Custody of the applications and orders shall be wherever the judge directs. Such applications and orders shall be disclosed only upon a showing of good cause before a judge of competent jurisdiction and shall not be destroyed except on order of the issuing or denying judge, and in any event shall be kept for ten years.

This section, unlike section 2517(1), covers disclosures requiring judicial approval.[9] The significance of this dichotomy, we believe, impacts upon both the standing issue and the disclosure issue. As to the standing issue, it would normally be a matter for the district judge, in the exercise of discretion, to determine who is properly involved in connection with the "good cause" determination. However, since the district judge here did not make a distinction between the § 2518(8)(b) standing and § 2517(1) standing, we have no exercise of discretion to review. Additionally, we are faced with the fact that Judge Butzner did notify Judge Hastings and allowed him to be heard, thus conferring a kind of *de facto* standing on him. Since Judge Hastings did appear before the court and since we agree with Judge Butzner's resolution of the disclosure issue, we find it unnecessary to discuss with any greater particularity the question of § 2518(8)(b) standing.

■ As indicated above, we further conclude that Judge Butzner properly found that "good cause" exists for the disclosure here and was correct in rejecting Judge Hastings' arguments. We need not discuss at length just what "good cause" means in each and every case. Suffice it to say here that the same reasons which led us to conclude that the Committee had shown a "particularized need" for the grand jury materials also support a showing of "good cause" for the Title III applications and orders. We do not decide, however, whether "good cause" and "particularized need" are synonymous because it is unnecessary to do so here.

■ As for the contents of the wire communications themselves, we conclude that Judge Hastings does not have standing under the provisions of Title III to seek their suppression. Title 18 U.S.C. § 2518(10)(a) (Supp.1987) provides that:

Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any wire, oral, or electronic communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that—

(i) the communication was unlawfully intercepted;

(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

(iii) the interception was not made in conformity with the order of authorization or approval.

Such motion shall be made before the trial, hearing, or proceeding unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion. If the motion is granted, the contents of the intercepted wire, oral, or electronic communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this chapter. The judge, upon the filing of such motion by the aggrieved person, may in his discretion make available to the aggrieved person or his counsel for inspection such portions of the intercepted communication or evidence derived therefrom as the judge determines to be in the interests of justice.

Title 18 U.S.C. § 2510(11) (Supp.1987) defines "aggrieved person" as follows:

"aggrieved person" means a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed;

---

**9.** Although section 2518(8)(b) only refers specifically to "applications" and "orders," we construe "applications" to include any related necessary documentation such as affidavits and progress reports.

It is clear from the record that Judge Hastings was not the "person against whom the interception was directed" nor was he a "party" to any intercepted wire communication.[10]

More significantly, however, the whole question of standing as to the contents of the wire communications is premature. If Judge Hastings had standing, the place to assert it would be before the tribunal (i.e., the Senate) where the evidence is to be used against him. Standing here relates to usage, not disclosure. As previously noted, the FBI needs no prior judicial approval to make this disclosure, and indeed it appears clear that such disclosure has already been made by the Department of Justice to the Committee and served as the basis for the Committee's requests which generated this litigation.[11]

■ To the degree that it has been argued that the Committee is not a proper party to receive an FBI disclosure, we reject this argument and agree with Judge Butzner that under these circumstances (impeachment proceedings) the Committee falls within the definition of "investigative officer" contained within 18 U.S.C. § 2517(1). Also, it matters not that the materials disclosed to the Committee by the Department of Justice related to matters other than those that were the focus of the original Title III interceptions. Title 18, United States Code, section 2517(5) specifi-

cally provides for the disclosure of such unrelated materials.[12]

Even if the disclosure made by the Department of Justice was to an unauthorized person or agency, the remedy for such unauthorized disclosure would be of no avail to Judge Hastings. Title 18, United States Code, section 2520 provides for a civil damages remedy to persons whose wire communications were disclosed in violation of Title III. Judge Hastings is not such a person.[13]

Although our analysis does not completely track that of the district court, we reach the same conclusion and AFFIRM.

NATHANIEL R. JONES, Circuit Judge, dissenting:

I respectfully dissent from the majority's legal conclusions in two respects. First, I disagree with the finding that the Committee has demonstrated the "particularized need" necessary to obtain the grand jury transcripts and materials it desires. Second, I disagree with the interpretation given to the term "investigative officer" as that term is found in the Electronic Surveillance Act, 18 U.S.C. § 2510(7) (1982) (Title III). The seriousness of this matter, its historical uniqueness and its policy implications compel me, in this dissent, to focus on these two prongs of the majority opinion. At the outset, however, I wish to emphasize that my dissent is not an expression of

---

**10.** Congress specifically considered the broader definition of "aggrieved person" urged by Judge Hastings when it rejected a proposed amendment by Senator Hart which would have given standing to any person against whom wiretap evidence is offered. 114 Cong.Rec. S 12508 (1968).

**11.** *See infra* note 13.

**12.** Title 18 U.S.C. § 2517(5) (Supp.1987) reads in relevant part:

When an investigative or law enforcement officer, while engaged in intercepting wire, oral, or electronic communications in the manner authorized herein, intercepts wire, oral, or electronic communications relating to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in subsections (1) and (2) of this section....

**13.** The resolution of these Title III issues is complicated because of the manner in which the Committee proceeds. By using a letter request as opposed to a pleading, there is no particularization of statutory sections or reference to authority on which the Committee relies. Thus, we are required to parse the request against the backdrop of the relevant statutes and construct an analysis. We understand, of course, that the Committee proceeds by letter requests for purposes of comity and because it does not concede that its authority to secure these materials is limited by the relevant statutes. For this reason, the Committee did not really argue that the Department of Justice has already made a section 2517(1) disclosure to them because of the possibility that such disclosure might have been improper.

the propriety or impropriety of this, or any other, impeachment. Rather, such a decision rests exclusively with the respective members of the House and Senate.

## I.

Our discussion pertaining to the release of grand jury materials in *In re Request for Access to Grand Jury Materials, Grand Jury No. 81-1 (Miami)*, 833 F.2d 1438 (11th Cir.1987) (*Hastings I*), can be summarized as follows. In determining whether such materials are to be released, the court examines whether the movant, *i.e.*, the Committee, has demonstrated a particularized need pursuant to Fed.R. Crim.P. 6(e). Second, the court examines the interests underlying the traditional principle of grand jury secrecy and determines whether those interests are applicable to the relevant disclosure. Third, assuming such interests are applicable, the court, using its discretion, balances the countervailing principles. In this case, however, the demonstration of a particularized need by the Committee which would outweigh the principle of grand jury secrecy has not been made.

In *Hastings I*, in finding that the Committee had made a showing of particularized need, we stated:

> The Committee has asserted a particularized need sufficient to warrant disclosure.... The Committee has asserted an interest in conducting a full and fair impeachment inquiry. The Committee's need for grand jury material, which may

contain the freshest recollections of some of the key witnesses to the events being investigated by the grand jury, is particularly compelling in this inquiry, *since the events which are the subject of the impeachment inquiry took place almost seven years ago.*

*Hastings I*, 833 F.2d at 1442 (emphasis added). The majority finds that Judge Hastings's attempts to distinguish the present situation from the earlier case "are unpersuasive." I disagree. Unlike the prior grand jury investigation, this grand jury investigation began and ended in 1986 *without* returning an indictment against Judge Hastings. Further, while the Committee argues that the testimony presented to the grand jury is the "best evidence," *i.e.*, it contains the witnesses' freshest recollections, the Committee has not proven this contention by exploring any alternative in which it might obtain the same evidence. Only *two* people testified before the 1986 grand jury; Steven Clark, the Mayor of Dade County and Chris Mazzella, an FBI agent. No attempts have been made to subpoena or take testimony from either of these witnesses; thus, the Committee is seeking only the most convenient way to gain access to the materials and testimony it desires. In my judgment, that is a perilous short cut and one that I find objectionable.

Pursuant to the principle of secrecy which underlies grand jury proceedings, and which is applicable here [1], the Committee should be required to exhaust all *reasonable* alternatives in which it might gain

---

1. The majority indicates that the concerns of grand jury secrecy are not implicated in this appeal. This is presumably because the 1986 grand jury investigation has terminated. I disagree with this conclusion for the reasons set forth in our opinion in *Hastings I*. *See* 833 F.2d at 1441. In *United States v. Procter & Gamble Co.*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958), the premier case in this area, the Court set forth the following reasons as supporting the principle of grand jury secrecy:

    (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury

and later appear at the trial of those indicted by it; (4) *to encourage free and untrammeled disclosure of persons who have information with respect to the commission of crimes;* (5) to protect [the] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*Id.* at 681 n. 6, 78 S.Ct. at 986 n. 6 (emphasis added). In *Hastings I*, only the fourth consideration was deemed to be affected by the disclosure of the grand jury materials to the Committee. That same consideration is also affected by the current disclosure. As we stated in *Hastings I*:

[p]ersons who testified before the grand jury did so with the expectation that their testimony would remain secret. Additionally, per-

the information it desires prior to the time it seeks to obtain the actual grand jury transcripts and materials. Thus, I would require the Committee to interview, or at least make an attempt to interview, the two witnesses who testified before the grand jury, then, after such interviews, based upon the results, make its claim for the actual grand jury materials.

In advocating such a requirement, I only ask that the Committee exhaust the means to gain the information it desires which are reasonable and which can be undertaken expeditiously. I am cognizant of the time-table under which the Committee labors, but pursuant to the balance of the above-mentioned interests and policies, I feel that this is the best answer to a serious problem.

In dissenting, I incorporate, as did the majority, our discussion on this matter as found in *Hastings I.* I reach a different conclusion than the majority based upon the differences in the two factual situations and in my reluctance to prematurely penetrate the secrecy of the grand jury proceedings. Unlike the grand jury in *Hastings I* which terminated its inquiry in 1981 after returning an indictment against Hastings which resulted in a trial, the 1986 grand jury had *only* two witnesses who testified before it, did not return an indictment and thus, public disclosure of the evidence presented to it has been minimal due to the fact that there was no trial. This evidence may be available to the Committee from the two witnesses who testified before the grand jury only for the asking. It seems to me that such steps, however small, should be taken prior to the time the cloak of grand jury secrecy is penetrated. As we stated in *Hastings I* with regard to the burden of proof placed upon the Committee:

sons called upon to testify before future grand juries will also consider the likelihood that their testimony may one day be disclosed to outside parties. *Persons who are not persuaded that their testimony, or even the fact that they testified, will remain secret may be deterred from testifying.*
*Hastings I,* 833 F.2d at 1441 (emphasis added). Steven Clark, the Mayor of Dade County, is a direct beneficiary of such a rule of secrecy. Without such protection, Mayor Clark might not

[A]fter the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it.... *However, a lessening of the burden is not an elimination of [it]....* The Committee *must assert* a particularized need for the grand jury records.

*Hastings I,* 833 F.2d at 1442 (citation omitted) (emphasis added).

Thus, in light of the fact that the grand jury proceeding is less than two years old and the Committee knows the identity of the only two witnesses who testified before it and could easily subpoena them, the Committee has not met its burden of demonstrating a particularized need.

## II.

With regard to the Committee's request for the electronic surveillance materials, I first emphasize that I agree with the majority on the standing issue. Since Judge Hastings appeared before the district court and was allowed to be heard, a *de facto* type of standing was conferred upon him. As such, it is unnecessary, as the majority points out, to decide this question. After this point, however, I am unable to go further down the road with the majority. I therefore dissent from the remainder of the majority's legal conclusions and interpretations.

The majority first finds that the Committee has established "good cause," as required by Title III, to obtain the electronic surveillance materials. Although the majority holds that it need not decide whether the terms good cause and particularized need are synonymous, it concludes that the reasons behind its finding of particularized need in the grand jury context support its finding of good cause in the Title III statutory setting. Thus, for the reasons stated in my discussion relating to particularized

have revealed any information to the grand jury, and, his testimony certainly comprises a big part of the materials requested by the Committee.

Further, in this situation, the first part of the fifth consideration would also be implicated. Hastings was not indicted and no trial resulted from the 1986 grand jury's investigation. As such, public disclosure of those proceedings has been minimal.

need, I would hold that the Committee, as of now, has not met the good cause standard.

The majority also holds that the Committee is the proper party to receive the electronic surveillance materials because it falls within the definition of "investigative officer." An investigative or law enforcement officer is entitled to receive such materials as are at issue, pursuant to certain conditions, from other investigative or law enforcement officials. In my opinion, the Committee in no way meets this definition. This definition, as found in 18 U.S.C. Section 2510(7), provides:

> "Investigative or law enforcement officer" means any officer of the United States or of a State of political subdivision thereof, who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter, and any attorney authorized by law to prosecute or participate in the prosecution of such offenses; ....

18 U.S.C. § 2510(7) (1982).

It is quite certain that this provision, when written, was not contemplated as being used in an impeachment setting where it might be interpreted as including members of a House Committee within its definition of investigative officers. Rather, this statute was written to include FBI agents, local and state police officers as investigative officials and, as such, to promote cooperation and uniformity in the national and local law enforcement networks. Such coverage is a far cry from a House Committee involved in an impeachment investigation of a federal judge. Indeed, it is admirable to attempt to construe this provision as covering such legislative officials when such officials, i.e., members of the House Committee, are not clothed with any of the traditional indicia found on those individuals who truly fall within this definition, i.e., federal agents and state police officers. As such, I hold the view that to allow the House Committee to fall within this definition is to interpret the statute in a way in which Congress never intended and in a way in which it should not be construed.

While we must defer to Congress as it carries out its constitutional duties regard-

ing impeachment, we, as members of the judiciary, must not shirk nor abdicate our own constitutional responsibilities. The more difficult the case, the greater care we must exercise to ensure that we do not cut corners in reaching our decision. This case is one which demands the greatest of care in insisting on a specific showing of a particularized need for the grand jury testimony.

Judge Hastings is a member of the judiciary who has long been acquitted, by a jury of his peers, of any criminal wrong-doing. An investigation into his conduct by the 1986 grand jury did *not* produce an indictment. Although such facts are not dispositive, they nonetheless emphasize the need for the judicial branch to proceed with great caution with respect to sanctioning the production of secret grand jury testimony in pursuit of a generalized inquiry. Such should be disgorged only upon a specific showing of particularized need and this, in my judgment, has not been shown.

For the above reasons, I would deny the Committee's request for the grand jury and electronic surveillance materials. Therefore, I respectfully dissent.