The COUNTY OF OAKLAND, by
George W. KUHN, the Oakland
County Drain Commissioner, Plaintiff,

v.

The CITY OF DETROIT, et
al., Defendants.

No. 84–CV–1068.

United States District Court,
E.D. Michigan, S.D.

Dec. 14, 1984.

Philip G. Tannin, Detroit, Mich., for plaintiff.

Robert H. Fredericks, II, Pontiac, Mich., David R. Getto, Southfield, Mich., Bryan P. Gettings, Arlington, Va., James I. Rubin, Chicago, Ill., Edward F. Bell, S. Allen Early, Deborah Gaskin, Detroit, Mich., William W. Misterovich, Macomb County Public Works, Mt. Clemens, Mich., Ellen Ritteman, Asst. U.S. Atty., Detroit, Mich., Richard E. Zuckerman, Troy, Mich., N.C. Deday Larene, David DuMouchel, Neal Fink, Detroit, Mich., Robert S. Harrison, Birmingham, Mich., James A. Smith and Kathleen A. Lieder, Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

PHILIP PRATT, District Judge.

Plaintiff, the County of Oakland, by George W. Kuhn, the Oakland County Drain Commissioner, commenced this action in March of 1984 seeking damages for

defendants' alleged violations of the Sherman Act,[1] the Racketeer Influenced and Corrupt Organizations Act ("RICO"),[2] and breach of fiduciary duties. Plaintiff is a public corporation which is charged with operating and maintaining sewage systems for collecting and transporting sanitary and industrial wastes and storm water. Plaintiff entered into three separate contracts with defendants City of Detroit and the Detroit Water and Sewage Department ("DWSD") for the transportation, treatment and disposal of its waste to DWSD facilities. Plaintiff alleges that the contracts provided that plaintiff pay Detroit according to the costs incurred by Detroit and the DWSD in providing the treatment and disposal service. The basic contention of plaintiff's complaint is that the named defendants perpetrated a scheme of bribery and corruption which coupled with the wrongful acts of negligence and breach of fiduciary duties of the Mayor of Detroit, "unduly and illegally inflated" the costs of processing the sewage which "unconscionably and unlawfully inflated" the amount charged by the City of Detroit under the contracts.[3] Several motions are now before the Court which address or are related to subpoenas plaintiff has served upon Assistant United States Attorneys in this District for the release of wiretaps obtained under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended, 18 U.S.C. §§ 2510–2520. The primary motions under consideration are defendants' "Motion to Quash Subpoenas & Enjoin Plaintiff From Obtaining Similar Subpoenas" and "Motion to Enjoin the United States Government from Complying With Subpoenas." [4]

The instant case has its genesis in civil and criminal proceedings concerning the administration of the Detroit sewer system. In May of 1977 the Environmental Protection Agency commenced suit against the State of Michigan and the City of Detroit for alleged violations of federal water and air pollution standards. *United States v. City of Detroit*, Civil NO. 77–71100 (hereinafter referred to as *"EPA"*). This case was assigned to Chief Judge John Feikens. On September 11, 1977 the Court entered a Consent Judgment mandating that the defendants comply with federal standards by certain dates. *See United States v. City of Detroit*, 476 F.Supp. 512 (E.D.Mich.1979). The defendants failed to comply with the time tables in the Consent Judgment. Consequently, in October of 1978, Judge Feikens appointed a monitor to study the operation of the Detroit sewer facilities and recommend remedial measures. After receiving the monitor's report, in March of 1979, the Court appointed the Mayor of the City of Detroit as administrator for the Detroit wastewater treatment facilities, empowering the Mayor to control, manage and operate the plant so as to achieve compliance with the Consent Judgment at the earliest possible date.

Thereafter the Government began investigating possible corruption within the DWSD. In order to further this investigation, the Government sought warrants to permit certain wiretap activities and obtained such warrants from Chief Judge Feikens. The products of these wiretaps lead to the indictments in the case of *United States v. Beckham, et al,* Criminal No. 83–6007 (commonly referred to as *"Vista"*), which included all the defendants in the instant case except for Walter Tomyn, Mayor Coleman Young, and the corporate and city entities. The *Vista* defendants were charged with alleged wrongdoing in

---

**1.** 15 U.S.C. §§ 4 & 15.

**2.** 18 U.S.C. §§ 1964 (a) & (c).

**3.** This case was originally assigned to District Judge George E. Woods, but reassigned to Judge John Feikens pursuant to Local District Court Rule 8. Judge Feikens later recused himself and the case was then randomly assigned to this Court.

**4.** These motions were originally brought by counsel for defendants Nancy Allevato, as personal representative for the Estate of Michael J. Ferrantino, Charles Carson, and Waste Disposal, Inc. All other defendants but Darralyn Bowers and Vista Disposal, Inc. have joined in these motions.

their contractual arrangements with the DWSD including the bribing of the Director of the DWSD, Charles Beckham.

The first *Vista* trial was conducted in early 1984 before District Judge Robert E. DeMascio. That trial ended in a jury verdict finding defendants Michael Ferrantino, Sam Cusenza, and Darralyn Bowers guilty of conspiracy in violation of RICO. The jury could not agree on a verdict concerning the other counts and defendants. The Government requested a retrial which was scheduled for the summer of 1984. On April 16, 1984, before the second trial commenced, the plaintiff served subpoenas on various agents of the Government to obtain access to the tape recordings and other records of electronic surveillance conducted by the United States. On April 17, 1984, Judge DeMascio issued an order which enjoined the Government from complying with the subpoenas "until further order of this Court."[5] The second trial led to the conviction of both Beckham and Bowers on all charges.[6]

After the verdict in the second trial, various members of the news media petitioned Judge DeMascio for the release of the tapes which had been played during the *Vista* trials. Judge DeMascio ruled that the tapes were the property of the Government and that the Government should decide whether they should be released. Subsequently, the Government voluntarily released to the news media those portions of the surveillance materials which were admitted into evidence and played in open court. In the subpoenas in question, plaintiff seeks not only the publicly disclosed surveillance material, but also any other electronic surveillance material obtained by the Government.

Defendants present several arguments to support their motions to quash the subpoenas or to enjoin the Government from releasing the material. These arguments can be placed generally into two categories. The first category consists of those contentions attacking the legitimacy of the surveillance and its products. Defendants submit five arguments in support of this first contention:

(a) the electronic surveillance conducted pursuant to Court order were illegally conducted because the authorizing Judge, Judge Feikens, was not a neutral and detached magistrate;

(b) the electronic surveillances conducted pursuant to Court order were illegally executed because ordinary investigative techniques had not been exhausted as required by 18 U.S.C. §§ 2518(1)(c) and 2518(3)(c) prior to obtaining the interception orders;

(c) probable cause to believe that the phones to be intercepted were used or about to be used in the commission of the offense did not exist to support the warrant;

(d) the electronic surveillances conducted pursuant to Court order were illegally conducted because of the failure to comply with various provisions of Title III; and

(e) that the intercepted communications cannot be disclosed by the Government or used by others in any judicial proceeding where the communications were illegally intercepted.

The second category of challenges concerns the release of the evidence gained by electronic surveillance to private litigants in a civil proceeding. Here, defendants present two arguments:

---

**5.** The parties have not addressed the effect of this order on the issues before this Court. Presumably, Judge DeMascio's stay is still operative and would prohibit the Government from releasing the surveillance material, although the purpose behind the stay would appear to have ended with the verdict in the second trial. The plaintiff should petition Judge DeMascio concerning the present effect of this order.

**6.** James Ferrantino died before the second *Vista* trial and the prior criminal proceedings were vacated *ab initio*. Defendants Valentini, Cusenza, and Carson plead guilty and were not defendants in the second *Vista* trial.

(a) that the intercepted communications cannot be disclosed by the Government for use as evidence by private plaintiffs in a civil antitrust action; and

(b) that the intercepted communications cannot be disclosed by the Government for use as evidence by private plaintiffs in a civil RICO action.

The Court need not pass upon the merits of defendants' first category of challenges since those issues have been previously determined by Judge DeMascio. The *Vista* defendants raised these arguments in a motion to suppress brought before the commencement of the first *Vista* trial. In his opinion of November 29, 1983, Judge DeMascio rejected each one of the challenges raised in this first category.[7] Plaintiff argues that the defendants who were also defendants in the *Vista* case cannot again raise these same arguments under the doctrine of collateral estoppel. Plaintiff further contends that the defendants who were not involved in the *"Vista"* trial do not have standing to raise many of these objections since they are grounded upon privacy interests which can be properly raised only by a person who was either a party to the communications or who had expectations of privacy in the phones which were tapped. *See United States v. Payner*, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980); *United States v. Giacalone*, 455 F.Supp. 26 (E.D.Mich.1977), *aff'd sum num, United States v. Feldman*, 606 F.2d 673 (6th Cir.1979).

■ Whether the doctrines of collateral estoppel or standing would prohibit defendants from relitigating these issues, certainly the doctrine of stare decisis and institutional juridical principles would strongly counsel against reconsideration of these matters. First, Judge DeMascio's decision is a reasoned, recent decision of this District on the identical legal and factual questions. *E.g., United States v. Anaya*, 509 F.Supp. 289, 293 (S.D.Fla.1980), *aff'd sum nom, United States v. Zayas-Morales*, 685 F.2d 1272 (8th Cir.1982) ("absent unusual or exceptional circumstances, judges of coordinate jurisdiction within a jurisdiction should follow brethren judges' rulings."); *Buna v. Pacific Far East Line, Inc.*, 441 F.Supp. 1360, 1365 (N.D.Cal.1977) ("Judges of the same district court customarily follow a previous decision of a brother judge upon the same question except in unusual or exceptional circumstances.") Second, the close relation of the instant case to the *Vista* case gives Judge DeMascio's decision more than ordinary precedential value. Judge DeMascio's holding was rendered in a criminal proceeding which has a jury verdict and an appeal pending, while the instant case is a tangential civil matter. Many of these issues are certain to be raised on the *Vista* appeal before the Sixth Circuit. Under such circumstances, it would be inappropriate for this Court to rule on the same issues. Therefore, this Court will defer to the determination of Judge DeMascio.

As to the second category of defendants' arguments, the defendants first contend that the intercepted communications cannot be disclosed by the Government for use as evidence by private plaintiffs in a civil antitrust or RICO action. Plaintiff's application for the wiretap material is governed by section 2517(3) of Title III which provides:

> Any person who has received, by any means authorized by this chapter, any information concerning a wire or oral communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter *may disclose the contents of that communication* of such derivative evidence *while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof.*

18 U.S.C. § 2517(3) (emphasis supplied).

■ Originally subsection (3) only permitted disclosure in criminal or grand jury

---

**7.** Judge DeMascio's decision addressed defendants' arguments in the following pages of that Memorandum Opinion: argument (a) at pages 26–40; argument (b) at pages 17–20; argument (c) at pages 20–24; and argument (d) at pages 24–26. Argument (e) is moot since no impropriety was found under Title III.

proceedings. In 1970, Congress amended the subsection as part of § 902(b) of the Organized Crime Control Act of 1970, which established RICO, to allow disclosure "in any proceeding." Although this language is broad, it is certain that Congress did not intend to create "a general civil discovery mechanism." *National Broadcasting Company v. United States Dept. of Justice*, 735 F.2d 51, 54 (2nd Cir.1984); *United States v. Dorfman*, 690 F.2d 1230, 1232–33 (7th Cir.1982) ("we find no evidence that [the drafters of § 2517(3)] wanted to create a right of public access"). *See United States v. McNulty*, 729 F.2d 1243, 1264–69 (10th Cir.1983) (Title III must be construed to effectuate Congress' overriding concern for the protection of privacy). *See generally Gelbard v. United States*, 408 U.S. 41, 48, 92 S.Ct. 2357, 2361, 33 L.Ed.2d 179 (1972); *Berger v. New York*, 388 U.S. 41, 63, 87 S.Ct. 1873, 1885, 18 L.Ed.2d 1040 (1967).

Only one Court of Appeals decision, *National Broadcasting Co. v. United States, supra* (hereinafter referred to as "NBC"), has touched upon the question of whether private civil litigants are entitled to surveillance material gathered by the Government pursuant to Title III. In *NBC*, the plaintiff applied to the district court to inspect material collected through electronic surveillance pursuant to Title III. NBC was defending a libel suit brought by entertainer Wayne Newton. Newton claimed that NBC's televised commentaries concerning the indictment of friends of the entertainer and his alleged involvement in their wrongful activity were false and defamatory. NBC sought the release of recordings of wiretaps which were the basis for the indictment on the theory that the truth of its commentaries would be established. The Government opposed disclosure. The district court ruled that it lacked authority under § 2517(3) to compel the Government to release the tapes to a private litigant pursuing a civil matter. The Court of Appeals affirmed.

The Second Circuit ruled that the 1970 amendment did not permit NBC to obtain information gained under Title III because its civil suit was not related to the purposes of the amendment. The court stated:

The change in § 2517(3) was accomplished in § 902(b) of the Organized Crime Control Act of 1970; the stated purpose of this Act was "to seek the eradication of organized crime in the United States ..." Section 902(b) itself was part of Title IX, which comprised the Racketeer Influenced and Corrupt Organizations Act (RICO). We need not decide whether the extension covers only Government civil RICO proceedings, and does not apply to such other proceedings as Government civil antitrust actions, actions by the Securities and Exchange Commission, defense of tax fraud suits or *private RICO actions. The suit against NBC in Nevada is none of these, and we are sure that Congress did not utilize a provision in the Organized Crime Control Act to make the fruits of wiretapping broadly available to all civil litigants who show a need for them.*

735 F.2d at 54 (emphasis supplied).

The *NBC* court further stated in *dicta* that § 2517(3) contemplates that the Government and not the courts should decide whether wiretap material be released. The court stated:

Under Title III, with few exceptions not here relevant, no one other than the Government can lawfully engage in wiretapping and it therefore is not so unusual that only the Government can enjoy its fruits. Beyond that, the Government is in a position to make a judgment whether disclosure of the intercepted evidence will or will not be in accordance with the overall public interest, while a private litigant is not. NBC is certainly right in saying that the Government should not be arbitrary in making the disclosure to some private citizens but not to others. *Id.* [8]

■ Unlike the circumstances in the *NBC* case, in the instant case the Govern-

---

**8.** The Court further favorably noted the new    Department of Justice policy "of non-disclosure

ment has already disclosed portions of the surveillance material in the *Vista* trials. Various surveillance tapes were admitted into evidence and played in open court. Moreover, the Government has released the material which was used as evidence at trial to the news media. Section 2517(3) prescribes the proper method of disclosure of surveillance material. Once the material has been revealed, however, the purpose of Section 2517(3) ceases and the requirements of that section no longer govern. Under such circumstances, the privacy interests of the defendants cannot stand as an obstacle to the public's access to evidence admitted in open court. *Accord Dowd v. Calabrese,* 101 F.R.D. 427 (D.D.C. 1984); *See e.g., Nixon v. Warner Communications,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980); *Brown & Williamson Tobacco Corp. v. FTC,* 710 F.2d 1165 (6th Cir.1983); *In re National Broadcasting Co., Inc.,* 653 F.2d 609 (D.C. Cir.1981).[9] Therefore, the subpoenas will not be quashed to the extent they seek the surveillance material disclosed during the *Vista* trial and the Government will not be enjoined from releasing such material.[10]

in all private litigation save perhaps in private civil RICO suits or in other similar situations ..." *Id.* at 54–55.

**9.** Even if the requirements of section 2517(3) were determined to be applicable to the surveillance material admitted into evidence at the criminal trial, if the Government decided not to release to the plaintiff the information it released to the press, the Court might feel compelled to find that determination as arbitrary and order the Government to release the material. *See National Broadcasting Company v. United States Department of Justice, supra,* 735 F.2d at 54.

**10.** In seeking the surveillance materials which were disclosed in the criminal trials the plaintiff proceeds at its own peril. Surveillance materials collected in violation of Title III are subject to the statutory exclusionary rule of section 2515, which states:

§ 2515 Prohibition of use as evidence of intercepted wire or oral communications

Whenever any wire or oral communications has been intercepted, no part of the contents of such communication and *no evidence derived therefrom may be received in evidence in any trial,* hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

18 U.S.C. § 2515 (emphasis supplied). The statutory mandate of Title III is absolute and is only subject to the specific exceptions delineated in the act. *See e.g., Gelbard v. United States,* 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972). This section prohibits the use of improperly gained surveillance material and any evidence "derived" from that material. *See United States v. Spagnuolo,* 549 F.2d 705 (9th Cir.1977) (excluding evidence obtained pursuant to search warrant of which supporting affidavits were based upon material gathered in violation of Title III); *United States v. DiMuro,* 540 F.2d 503 (1st Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977) (evidence obtained due to surveillance in violation of Title III is tainted and not admissible); *In re Proceedings to Enforce Grand Jury Subpoenas,* 430 F.Supp. 1071 (E.D.Pa.1977) (handwriting exemplars, fingerprints, photographs and voice exemplars of grand jury witness is "evidence derived" from surveillance in violation of Title III and must be suppressed).

If the Government released the tapes to Oakland County and the Sixth Circuit overrules Judge DeMascio's decision regarding the propriety of the surveillance material, then not only will the surveillance material be excluded from any hearing, but *any "evidence derived"* may likewise be suppressed. *See Timet, A Division of Titanium Metals, Corp. v. N.L.R.B.,* 671 F.2d 973 (6th Cir.1982); *Bilbo v. United States,* 633 F.2d 1137 (5th Cir.1981); *Fleming v. United States,* 547 F.2d 872 (5th Cir.1977). The plaintiff may then face the knotty problem of demonstrating that its evidence is not "tainted" and subject to suppression.

Another aspect of plaintiff's risk concerning this material should be made clear. Plaintiff urged that even if it is found that the electronic surveillance was gathered improperly, a court could apply a good faith exception to the statutory exclusionary rule because, according to plaintiff, no deterrence value will be gained by the suppression of evidence obtained pursuant to a warrant. Plaintiff's argument fails to distinguish between the statutory exclusionary rule and the fourth amendment exclusionary rule. The good faith exception has only been applied to the *judicially created* fourth amendment exclusionary rule. That exception is based on the Supreme Court's determination that the primary purpose of such suppression is to *deter* future conduct on law enforcement officials. *See e.g., United States v. Leon,* —— U.S. ——, 104 S.Ct.

The subpoenas also seek surveillance materials which have not been heretofore disclosed in the criminal trials. The disclosure of this material presents a different problem. As the *NBC* court suggests, the 1970 amendment to § 2517(3) clearly indicates that Congress intended that surveillance material gathered pursuant to Title III could be used in some civil proceedings. But it is not clear that Congress intended *private* litigants pursuing civil RICO claims could gain access to such surveillance materials. It is not necessary, however, for this Court to rule on whether the instant plaintiff is entitled to such information because of the current status of this case.

First, the Government's position concerning the release of this information must be made known. As recognized in the *NBC* opinion, the Government is apparently given authority under § 2517(3) to determine whether release of the material would be in the overall public interest. The Government has not yet indicated whether it is willing to release the surveillance material. It is therefore premature for this Court to determine whether the plaintiff is entitled to the wiretap materials not presented at trial.

Second, in their reply brief defendants contend that all the materials sought by the subpoenas are grand jury materials and cannot be provided to plaintiff despite § 2517(3). Again, the Court does not have before it sufficient information to rule on this issue. The Court does not have any indication as to the precise material involved and what material was presented to the grand jury. The Government's position on this matter is also necessary for any informed decision. Hence, the Court cannot rule upon this question until the Government has had an opportunity to respond and the parties have more thoroughly presented the issue.

Third, it is questionable whether disclosure of the materials which were not disclosed at the criminal trial can be compelled through subpoena pursuant to § 2517(3). Subsection (3) provides that properly gained material: "may [be] disclose[d] ... while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof."

Before the 1970 amendment, subsection (3) was generally thought to allow "disclosure of wiretap material through the testimony of a Government agent, but obviously only after the Government has determined that the interests in disclosure outweigh the important privacy interests that Congress sought to protect in Title III." *National Broadcasting Company v. United States Department of Justice, supra,* 735 F.2d at 54. The 1970 amendment did not change the language regarding the method of disclosure, only that disclosure was proper outside criminal proceedings. This suggests that Congress contemplated the same method of disclosure.

Recently, a federal district court concluded that disclosure pursuant to § 2517(3) can be made only during the testimony of a Government agent. In *Dowd v. Calabrese,* 101 F.R.D. 427 (D.D.C.1984), two Assistant U.S. Attorneys brought libel actions against the Wall Street Journal for a story which asserted that the plaintiffs had improperly pressured an individual into testifying at a criminal trial. The Journal filed motions to compel which sought disclosure of two wiretap tapes. The Journal claimed that the tapes would support the truthfulness of its story. A portion of these tapes were presented during the criminal trial. The district court ruled that the Journal was entitled to the portions of the tapes

3405, 82 L.Ed.2d 677 (1984). The Supreme Court has determined, however, that Congress intended the statutory exclusionary rule of § 2515 to not only deter improper conduct but also "to protect the integrity of the court and administrative proceedings." *Gelbard v. United States, supra,* 408 U.S. at 51, 92 S.Ct. at 2363.

Simply, it appears Congress did not provide for a good faith exception. Therefore, if the Sixth Circuit determines that the electronic surveillance was obtained in violation of the requirements of Title III, then suppression may well be mandated whether or not the Government acted in good faith.

which were made public. As to the remainder, the court stated: "There are several problems with this request. In the first place, section 2517(3) of Title III ... explicitly provides for disclosure only 'while [the individual is] giving testimony under oath or affirmation.' ... That is not what is involved here." *Id.* at 435. Thus, it appears that disclosure of the wiretap material not presented during the criminal trials cannot be required pursuant to pre-trial or discovery subpoenas absent some further showing.

THEREFORE, the Court ORDERS that subpoenas are quashed to the extent that they seek surveillance materials which have not been disclosed. The Court FURTHER ORDERS that the subpoenas will not be quashed to the extent that they seek surveillance materials which were disclosed during the criminal trials.[11]

IT IS SO ORDERED.

See also 509 F.Supp. 127.

---

**11.** Plaintiff, however, should petition Judge De-Mascio for a determination on the effect of his former order. *See supra* note 5.

Defendants Allevato, Carson and Wayne Disposal, Inc. have also moved for the Court to stay all proceedings on this matter until the Sixth Circuit has ruled upon the issues presented in the instant motions. Considering the ruling of the Court, the Court does not find that any useful purpose will be served by a stay.