**In re GRAND JURY 86–3 (MIAMI).**

United States District Court,
S.D. Florida.

Argued Nov. 10, 1987.

Decided Dec. 1, 1987.

Alan I. Baron, Special Counsel, Patricia Winn, Asst. Special Counsel, United States House of Representatives, Committee on the Judiciary, Washington, D.C., Richard

Gregorie, Chief Asst. U.S. Atty., Donna Barnett, Executive Asst. U.S. Atty., Miami, Fla., Jo Ann Farrington, Atty., U.S. Dept. of Justice, Washington, D.C., for U.S.

Terence J. Anderson, Coral Gables, Fla., Robert S. Catz, Cleveland, Ohio, William G. McLain, John W. Karr, Karr, Lyons & McLain, Washington, D.C., for Judge Alcee L. Hastings.

BUTZNER, Senior Circuit Judge, sitting by designation.

The United States House of Representatives Committee on the Judiciary is conducting an inquiry into whether United States District Judge Alcee L. Hastings, Jr., should be impeached. As part of the inquiry, the Judiciary Committee is examining Judge Hastings's conduct in authorizing and supervising an FBI investigation involving electronic surveillance. In letters to the court dated September 25, 1987, the Chairman of the Judiciary Committee requested the court to make available grand jury testimony, documents, and other information relating to the surveillance in question.

The committee is entitled to the wiretap material and related information it seeks because it has satisfied the requirements of Title III, Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2521. This circuit's recent decision, In Re: *Request for Grand Jury Materials*, 833 F.2d 1438 (11th Cir.1987), authorizes disclosure of the grand jury testimony that the Committee seeks.

I

The Committee has received information that in July 1985 the United States Attorney's Office in Miami, in connection with an investigation of the Miami local of the International Longshoremen's Association, filed an application to monitor the telephone conversations of several people. The surveillance ran from July 15, 1985, to September 14, 1985. Judge Hastings authorized the wiretaps, and he received progress reports on the information derived from the surveillance. The Committee has been informed that Judge Has-

tings, on the basis of the progress reports, warned Dade County Mayor Steven Clark not to associate with one or more persons who were "hot" or "had problems." Clark, the Committee alleges, relayed this information to one of the subjects of the investigation. The government then terminated the investigation for security reasons.

The Committee asks the court to unseal and authorize it to inspect and copy all documents relating to Judge Hastings's role in the electronic surveillance in question, including, but not limited to, the following:

1) The original application and supporting affidavit seeking authorization for the telephone interceptions described above;

2) All progress reports and requests for extensions of the interceptions;

3) The diary of former Assistant United States Attorney Roberto Martinez reflecting contacts with Judge Hastings;

4) Tapes and transcripts where any of the following persons appear: Steven Clark, Kevin "Waxie" Gordon, and Richard Bonehill; and

5) Reports of interviews by law enforcement officials of Clark, Gordon, and Bonehill.

In the same request, the Committee asks the court to authorize former Assistant United States Attorney Roberto Martinez and FBI agents Chris Mazzella and Geoffrey Santini to discuss any information they have concerning Judge Hastings's role in the investigation.

Although the Committee's counsel suggested that the requests could be granted ex parte, the court furnished Judge Hastings's counsel copies of the requests. At a hearing to consider the requests, the Committee, the Department of Justice, the United States Attorney for the Southern District of Florida, and Judge Hastings appeared through counsel.

II

Relying primarily on 18 U.S.C. §§ 2510(11) and 2518(10)(a), the Committee asserts that Judge Hastings lacks standing

to contest the request for wiretap materials. Judge Hastings asserts standing under 18 U.S.C. § 2517(5) and because the Committee seeks evidence to use against him.

Section 2510(11) defines an "aggrieved person" as one "who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." This definition includes a person on whose premises the intercepted conversation took place. *See United States v. Scasino*, 513 F.2d 47, 48–51 (5th Cir.1975). Section 2518(10)(a) confers standing on an aggrieved person to move to suppress the contents of a wiretap and evidence derived from it. In contrast, one who is not an aggrieved person lacks standing. *Scasino*, 513 F.2d at 50–51. The concept of standing adopted in Title III is derived from the principles governing standing to suppress wiretaps made in violation of the fourth amendment. *See Alderman v. United States*, 394 U.S. 165, 171–80, 89 S.Ct. 961, 965–70, 22 L.Ed.2d 176 (1969).

■ At the request of both parties the court inspected the applications, affidavits, orders, and progress reports pertaining to the wiretaps the Committee deems relevant to its inquiry.[1] Inspection disclosed that Judge Hastings was not a party to any intercepted conversation. He was not a person against whom any interception was directed, and no intercepted conversation occurred on his premises. Therefore, Judge Hastings cannot establish standing as an aggrieved person within the meaning of section 2510(11).

Section 2517(5), on which Judge Hastings relies, permits the disclosure and use of intercepts as evidence of offenses other than those specified in the order authorizing the tap.[2] This section does not enlarge the Act's definition of an aggrieved person. Nor does it confer standing on one who is not an aggrieved person.

The legislative history of Title III shows that Senator Hart proposed an amendment to the Act which would have granted standing to any "person against whom the communication, or evidence derived therefrom, is sought to be used." 114 Cong.Rec. S 12508 (1968). The amendment was not adopted. Therefore, the proposed use of the wiretap material against Judge Hastings does not confer standing. *See Alderman*, 394 U.S. at 175–76 and n. 9, 89 S.Ct. at 967–68 and n. 9.

In sum, Judge Hastings has neither statutory nor constitutional standing to suppress the wiretap material. *See Alderman*, 394 U.S. at 171–80, 89 S.Ct. at 965–70; 18 U.S.C. §§ 2510(11) and 2518(10)(a). Lacking standing to suppress, Judge Hastings also lacks standing to oppose the Committee's request either on his own behalf or on behalf of the other persons mentioned in the Committee's request.

### III

Judge Hastings's lack of standing, however, does not end this inquiry. Alternatively, the Committee argues that even if Judge Hastings has standing, the court should grant the Committee's request despite his objections. Furthermore, quite

1. The court directed that these papers, which are reproduced in two volumes, be sealed and made a part of the record for appellate review.

2. 18 U.S.C. § 2517(5) provides:
   When an investigative or law enforcement officer, while engaged in intercepting wire, oral, or electronic communications in the manner authorized herein, intercepts wire, oral, or electronic communications relating to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in subsections (1) and (2) of this section. Such contents and any evidence derived therefrom may be used under subsection (3) of this

section when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of this chapter. Such application shall be made as soon as practicable.
Subsection (1), which is quoted in n. 6, *infra*, authorizes an investigative or law enforcement officer to disclose the contents of an intercept to another officer. Subsection (2) authorizes an officer to use intercepts in the performance of his duties. Subsection (3) authorizes disclosure in a proceeding held under authority of the United States or any state.

apart from the Committee's alternative ground, an ex parte application for the material would require the court to determine the legality of disclosure.[3] Section 2515 provides that wiretaps disclosed in violation of Title III and any evidence derived from them may not be received in evidence in any hearing or other proceeding before any "legislative committee, or other authority of the United States...." Sections 2517 and 2518 contain limitations on disclosure of wiretap material that the court must observe.

■ In camera inspection of the wiretap papers disclosed that Judge Hastings approved the applications and entered orders authorizing and extending the taps. He and, on occasion, Chief Judge James Lawrence King filed and sealed progress reports. The court did not detect any violation of the Act in the authorization and conduct of the interceptions, and Judge Hastings's counsel has suggested none. Therefore, the wiretaps and the evidence derived from them are not subject to exclusion under section 2515 on the ground that they were obtained in violation of the Act. The next issue is whether the contents of validly obtained wiretaps and other pertinent information may be disclosed to the Committee.

Initially, the Committee asserts that the power of impeachment which Article I, section 2 of the Constitution vests in the House of Representatives entitles it to the information it seeks. It also relies on the Necessary and Proper Clause, Article I, section 8, and the Speech or Debate Clause, Article I, section 6.

These constitutional provisions undeniably support the Committee's request. Nevertheless, the broad exclusionary rule of section 2515 that Congress enacted to restrain even its own committees dictates that the court must determine whether disclosure of the material would violate section 2518(8)(b), which restricts disclosure of applications and orders granting authority for taps. Also, the court must decide whether disclosure would violate section 2517(1), which restricts disclosure of the contents of intercepts and derivative evidence.

## IV

■ Section 2518(8)(b) provides that applications and orders granting authority for taps shall be sealed. They may be disclosed only upon a showing of good cause before a judge. To show good cause the Committee relies in part on House Resolution 128, which was introduced March 23, 1987. It provides: *"Resolved,* That Alcee L. Hastings, judge of the United States District Court for the Southern District of Florida, is impeached of high crimes and misdemeanors."

Judge Hastings contends that because the congressman who introduced the resolution referred to the certificate of the Judicial Conference, the resolution is limited to the charges certified by the Conference, which do not involve the surveillance in question.[4] It is likely that the views of the Judicial Conference, which determined that impeachment might be warranted, prompted introduction of the resolution. *See* 133 Cong.Rec. H 1506 (daily ed. March 23, 1987). Nevertheless, neither the certificate nor the resolution purports to restrict impeachment proceedings to the matters contained in the certificate. Section 372(c)(8) of Title 28 U.S.C. provides that the Conference shall send its determination and record of proceedings "to the House of Representatives for whatever action the House of Representatives considers to be necessary." Recognition of the separation of powers between the Congress and the judiciary does not permit the court to imply a limitation on the House of Representatives' sole power to impeach. *See In Re: Request for Grand Jury Materials,* 833

---

3. It is quite appropriate to consider Judge Hastings's objections in addressing the Committee's alternative ground, which may become an issue on appeal should an appellate court conclude Judge Hastings has standing. The objections may also be treated as the response of an amicus with respect to the ex parte aspect of these proceedings.

4. The certificate of the Judicial Conference is described in *Hastings v. Judicial Conference of the United States,* 829 F.2d 91 (D.C.Cir.1987).

F.2d at 1445 (11th Cir.1987). Therefore, the resolution of impeachment supports the Committee's assertion of good cause to disclose the applications and orders.

The Committee also relies on the allegations recounted in the Chairman's letters which are set forth in Part I of this opinion. In camera inspection of the wiretap records revealed information pertinent to the Committee's investigation of these allegations. Therefore, the Committee has satisfied the requirement of section 2518(8)(b) to show good cause for disclosure of the wiretap applications and orders that it seeks.

## V

Section 2517(5) [5] permits an investigating officer who lawfully intercepts a conversation relating to an offense other than the offense specified in the order authorizing the tap to disclose the intercept in the manner allowed by section 2517(1). This section authorizes an investigative or law enforcement officer to disclose intercepted conversations to another investigative or law enforcement officer in the performance of their official duties.[6]

Relying on section 2517(1), the Committee seeks the progress reports, tapes, and transcripts of intercepted conversations specified in the Chairman's letter of September 25, 1987. Judge Hastings asserts that neither the Committee nor its counsel is an investigative or law enforcement officer within the meaning of section 2517(1) and neither is entitled to receive the material.

The United States Attorney has custody of most of the material the Committee seeks.[7] Manifestly, the United States Attorney and FBI agents are law enforcement or investigative officers. Former Assistant United States Attorney Roberto

Martinez had the same status during the surveillance in question. The issues therefore are whether the Committee or its counsel are investigative officers and whether disclosure to them is, in the language of the statute, "appropriate to the proper performance of [their] official duties...."

■ Vested with the power of impeachment, the House has referred the resolution of impeachment to the Committee. The Necessary and Proper Clause gives the House authority, through the Committee, to investigate information coming to the Committee's attention to determine whether impeachment is warranted. *See Kilbourn v. Thompson*, 103 U.S. (23 Otto) 168, 190, 26 L.Ed. 377 (1880); *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 422, 4 L.Ed. 579 (1819). Therefore the court concludes that the Committee and its counsel are investigative officers for the purpose of impeachment, acting in performance of their duties within the meaning of section 2517(1).

Judge Hastings contends, however, that the Committee and its counsel are not entitled to the intercepts even if they are investigative officers. He relies on *National Broadcasting Co. v. United States Department of Justice*, 735 F.2d 51 (2d Cir. 1984); *County of Oakland v. City of Detroit*, 610 F.Supp. 364 (E.D.Mich.1984); and section 2516. These cases put a gloss on the statute, adding the requirement that the government consent to disclosure of wiretapping material for use by a party in private litigation. Because section 2516 provides that the Attorney General or a designated Assistant Attorney General can authorize an application for a wiretap, Judge Hastings contends that only these officials can authorize disclosure.

---

5. For the text of § 2517(5) see note 1.

6. 18 U.S.C. § 2517(1) provides:
   Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication, or evidence derived therefrom, may disclose such contents to another investigative

or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.

7. The United States Attorney does not have custody of the diary of Roberto Martinez, who was formerly an Assistant United States Attorney.

Neither the Attorney General nor his designate has authorized disclosure to the Committee, but their authorization is unnecessary. *National Broadcasting* and *Oakland* refer to disclosure to private litigants for private litigation. The gloss they placed on the statute does not apply to this case. The dispositive statutory provision is section 2517(1), which authorizes disclosure among investigative officers without requiring any other government official to consent. The Committee has satisfied the requirements of this section. The United States Attorney for the Southern District of Florida and the Chief of the Public Integrity Section, Criminal Division, Department of Justice support the Committee's request. The Committee and its counsel are investigative officers for the purpose of impeachment. Therefore, pursuant to section 2517(1) the Committee and its counsel are entitled to receive the material and information they seek from the United States Attorney, former Assistant United States Attorney Roberto Martinez, and FBI agents Chris Mazzella and Geoffrey Santini.

## VI

The Committee also seeks to inspect and copy the testimony of Mayor Clark and FBI agent Chris Mazzella and any accompanying exhibits presented to Grand Jury 86-3 (Miami) on March 20, 1986, with regard to Judge Hastings's conduct in connection with the electronic surveillance in question. Judge Hastings objects on the grounds that the grand jury testimony is tainted by violation of Title III and the Committee is not authorized to investigate the electronic surveillance incident.

These objections do not bar disclosure. Part III of this opinion establishes, for the purpose of this proceeding, the legality of the wiretaps and the evidence derived from them. Parts III, IV, and V recognize the Committee's authority to conduct this investigation.

The resolution of impeachment, the allegations set forth in the Chairman's letter of September 25, 1987, and in camera inspection of the wiretap material establish that the Committee has shown a need for the grand jury testimony and exhibits to avoid a possible injustice in the congressional proceedings. The Committee's need is greater than the need for continued secrecy, and its request is limited to only relevant evidence. The Committee has shown a particularized need for disclosure sufficient to satisfy Federal Rule of Criminal Procedure 6(e). *See Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979). Judge Hastings's other objections to disclosure of the grand jury testimony and exhibits are foreclosed by In Re: *Request for Grand Jury Materials*, No. 87–5857 (11th Cir. Nov. 24, 1987).