In re ELECTRONIC SURVEILLANCE.

Robert E. BERG, Petitioner–Appellant,

v.

MICHIGAN ATTORNEY GRIEVANCE COMMISSION; United States of America, Respondents–Appellees.

No. 93–2615.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 12, 1994.

Decided March 23, 1995.

Carole M. Stanyar (argued and briefed), Mogill, Posner & Cohen, Detroit, MI, Neil H. Fink (briefed), Law Offices of Neil H. Fink, Birmingham, MI, for petitioner-appellant.

Jane Shallal (argued and briefed), Philip J. Thomas (briefed), Michigan Atty. Grievance Com'n, Detroit, MI, for Michigan Atty. Grievance Com'n.

Lynn A. Helland (argued and briefed), Office of the U.S. Atty., Detroit, MI, for the U.S.

Before: MILBURN, SUHRHEINRICH, and LAY,* Circuit Judges.

## AMENDED OPINION

SUHRHEINRICH, Circuit Judge.

Petitioner–Appellant Robert E. Berg ("petitioner") appeals from the district court's order granting the government's motion to unseal Title III recordings. In the meantime, the lower court has also ordered that its disclosure ruling be stayed pending the outcome of this appeal. The issue presented is whether a federal investigative officer may turn over wiretaps from a federal investigation to a state attorney grievance commission that is investigating potential misconduct by one of its licensed attorneys. We conclude that it may, and **AFFIRM.**

## I.

As part of its investigation of corruption at Detroit Recorder's Court and 36th District Court from 1984 through 1986, the Federal Bureau of Investigation ("FBI") used wiretaps authorized by U.S. District Judge Horace Gilmore pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520 (1982). One of the wiretaps was an interception of the telephone of Rudolph King, a court employee suspected of facilitating the payment of bribes to 36th District Court Judge William Haley and Recorder's Court Judge Donald Hobson. During the course of monitoring the wiretap, the FBI intercepted several telephone conversations in which petitioner, a

licensed Michigan attorney, allegedly arranged to make a payment to Rudolph King to get Judge Haley to dismiss a misdemeanor citation against one of petitioner's clients.

The federal government determined that it lacked jurisdiction to bring charges against petitioner in federal court, and, at the conclusion of its investigation, referred the matter to the Michigan Attorney Grievance Commission ("MAGC"). As part of its referral, the U.S. Attorney's Office for the Eastern District of Michigan provided transcripts of all the Title III transcripts pertaining to petitioner's bribery of Judge Haley.

The MAGC initiated proceedings against petitioner, and served a subpoena on the FBI demanding production of the relevant intercepted conversations. Because the intercepted conversations were sealed as required by Title III, § 2518(8)(a),[1] the United States Attorney's Office filed a motion to unseal. Petitioner filed a motion for order barring disclosure of Title III and grand jury information. The district court denied petitioner's motion and granted the government's. This appeal followed.

## II.

The district court held that the tapes could be disclosed because (1) an FBI agent is permitted to disclose the contents of the wiretap while giving testimony in Grievance Commission proceedings under § 2517(3); and (2) employees of the MAGC are investigative officers authorized to receive information in the performance of their duties under § 2517(1). We consider petitioner's challenges to these holdings in turn.

### A.

■ Section 2517(3) provides:

(3) Any person who has received, by any means authorized by this chapter, any information concerning a wire, oral, or electronic communication, or evidence derived therefrom intercepted in accordance with

---

* The Honorable Donald P. Lay, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. All statutory references are to Title 18, unless otherwise indicated.

the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or any State or political subdivision thereof.

The government maintains that petitioner has not challenged the district court's ruling under this section, and that because the lower court's ruling was correct, there is a complete and sufficient basis on which to affirm the district court's order. Whether "preserved" or not, we happen to agree with petitioner's assertion that this issue was not ripe for the district court's determination and is not ripe for this court's determination, because as yet, no federal agent has been called to testify "in any proceeding held under the authority of . . . any State or political subdivision thereof." § 2517(3).

### B.

Section § 2517(1) states:

(1) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication, or evidence derived therefrom, may disclose such contents to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.

Petitioner contends that the MAGC agents are not "investigative officers" within the meaning of this provision. Section 2510(7) defines "investigative or law enforcement officer" as follows:

(7) "Investigative or law enforcement officer" means any officer of the United States or of *a State* or political subdivision thereof, *who is empowered by law to conduct investigations of* or make arrests for *offenses enumerated in this chapter*, and any attorney authorized by law to prosecute or participate in the prosecution of such offenses[.]

Section 2510(7) (emphasis added). Thus, the question becomes whether the MAGC is "empowered by law to conduct investigations of . . . offenses enumerated in this chapter. . . ."

This query, in turn, has two components. First, is the MAGC empowered by law to conduct investigations? Because the statute speaks of "law" in general, and not merely federal law, and similarly does not limit the definition of "investigative or law enforcement officer" to federal officers only, but rather expressly includes officers of "a State," we look to the state's definition of the role of the MAGC. This court previously outlined the structure and function of the MAGC, albeit to a slightly different end, in *John Doe # 1 v. United States (In re Grand Jury 89–4–72)*, 932 F.2d 481 (6th Cir.), *cert. denied*, 502 U.S. 958, 112 S.Ct. 418, 116 L.Ed.2d 438 (1991):

[T]he Michigan Supreme Court has chosen to totally delegate its state constitutional authority to discipline attorneys to the Michigan Attorney Discipline Board. M.C.R. 9.110(A) & (D)(5). The Attorney Discipline Board is a privately funded agency comprised of two attorneys appointed by the state bar board of commissioners, and two laypersons and three attorneys appointed by the Supreme Court. M.C.R. 9.105; 9.110(B). The primary responsibility of the Board is to investigate and discipline attorneys suspected of misconduct. M.C.R. 9.105.

The Board's investigatory needs are served by the Attorney Grievance Commission which supervises and approves inquiries into alleged attorney malfeasance. M.C.R. 9.108(D)(2); 9.109(B)(5). The Commission is appointed in the same manner as the Board, and in turn, appoints one of its attorney members to the position of the Grievance Administrator. The Grievance Administrator is the individual upon whom the burden of investigation finally rests. M.C.R. 9.109(B)(5). The Grievance Administrator may ask the Commission to exercise its subpoena powers to facilitate his inquiry; persons failing to comply with a Commission subpoena may be held in contempt. M.C.R. 9.114(C).

Where the Grievance Administrator's investigation has yielded probable cause to suspect misconduct, the Commission may

authorize prosecution before the Board. M.C.R. 9.109(B)(6). That prosecution may culminate in a disciplinary hearing before a three attorney panel appointed by the Board. M.C.R. 9.111. The actions of that panel are reviewable by the full Board. M.C.R. 9.110(D)(5). The Board's decision may be reviewed at the discretion of the Michigan Supreme Court. M.C.R. 9.122(A).

*Id.* at 485. Although *Grand Jury 89–4–72* considered the role of MAGC's in the context of determining whether disciplinary proceedings were judicial in nature for purposes of Fed.R.Crim.P. 6(e)(3)(C)(i), we find its description helpful here. Thus, the MAGC is "empowered by [State] law" to conduct investigations.

■ This leads to the second inquiry: is the MAGC empowered to conduct investigations of offenses enumerated in Chapter 119?[2] Section 2516 provides a list of offenses for which federal agencies may seek authorization for interception of wire or oral communications. Petitioner argues that because "professional misconduct" is not an enumerated offense, the MAGC is not an investigative officer within the meaning of § 2510(7). We disagree. Although "professional misconduct" admittedly is not one listed in § 2516, the question, in accordance with the language of the statute, is whether the MAGC is empowered by law to conduct investigations of such offenses. In other words, contrary to petitioner's suggestion, the investigative officer does not derive its authority from the list of enumerated offenses, but rather from "law." *Contra Scott v. United States,* 573 F.Supp. 622, 625 (M.D.Tenn.1983) (§ 2510(7) "clearly limits the officials authorized to make or receive § 2517(1) disclosures by defining investigative or law enforcement officer in terms of the enumerated offenses in section 2516, none of which concerns a violation of the Internal Revenue Code. To ignore the clear meaning of that limitation renders nugatory both section 2510(7) and section 2517"; holding that IRS agents were not allowed to Title

III information to assess additional excise taxes), *rev'd on other grounds,* 767 F.2d 285 (6th Cir.1985), *cert. denied,* 475 U.S. 1081, 106 S.Ct. 1458, 89 L.Ed.2d 716 (1986).

This conclusion is best illustrated by scrutinizing the view espoused by the district court in *Scott* and by petitioner. The gist of this position is that if the officer could not have gotten the wiretap himself or herself in the first instance, then he or she cannot get its contents later from another officer who could and did obtain lawfully a wiretap. This line of reasoning makes some sense when the officer receiving the information is a federal officer, because presumably if he or she had the authority under federal law to investigate the enumerated offenses, he or she also had the authority to get his or her own wiretap. This reasoning does not fit the bill when the receiving officer is a state officer, however, because a state officer could not obtain his or her own wiretap in the first instance. *See* § 2516(1) ("The Attorney General, Deputy Attorney General, Associate Attorney General, or any Assistant Attorney General, any acting Assistant Attorney General, or any Deputy Assistant Attorney General in the Criminal Division specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications by the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made...."). Because § 2510(7) also envisions "State" officers within the definition of "investigative or law enforcement officer," Congress must therefore have envisioned "State" officers on the receiving end. To read the statute otherwise would render the qualifier "of a State" meaningless.

■ Under Michigan law, the Grievance Administrator is authorized to investigate alleged misconduct of attorneys, including serving a request for investigation in his own name if necessary. M.C.R. 9.109(5). The

---

**2.** Chapter 119, entitled "Wire Interception and Interception of Oral Communications" encom-

passes §§ 2510–2520.

Michigan Court Rules in turn define misconduct to include "conduct that violates a criminal law of a state or of the United States." *Id.* 9.104(5). Thus, the MAGC is clearly empowered to investigate an attorney's commission of federal crimes, including, but not limited to, those found listed in § 2516.

Our reasoning here today is essentially no different than that of Judge Freeman in *In the Matter of Elec. Surveillance,* 596 F.Supp. 991 (E.D.Mich.1984), *rev'd on other grounds, John Doe # 1 v. United States (In re Grand Jury 89-4-72),* 932 F.2d 481 (6th Cir.1991):

> Michigan General Court Rule 957.1 states that "[t]he Attorney Grievance Commission is the prosecution arm of the Supreme Court for discharge of its constitutional responsibility to supervise and discipline Michigan attorneys." The Grievance Administrator is appointed by the Attorney Grievance Commission and has the power and duty to "investigate alleged misconduct of attorneys, including serving a request for investigation in his own name." Misconduct is defined to include "conduct that violates a criminal law of a state or of the United States." The Grievance Administrator clearly seems to be an officer empowered to investigate the offenses enumerated in 18 U.S.C. § 2516 when those offenses are committed by members of the State Bar of Michigan. Under the disciplinary system established in Michigan, the Grievance Administrator's receipt and use of electronic surveillance information would be appropriate to the proper performance of his official duties.

*Id.* at 994 (footnotes omitted). The district court therefore properly relied upon this reasoning in concluding that disclosure of the requested Title III information was appropriate.

■ Petitioner also asserts that Grievance Commission personnel are not "investigative officers" within the meaning of § 2510(7), because they are not "officers," and because

they do not enforce criminal law. Although "officer" is not defined by Title III, we share the government's view that "any definition that excluded the investigative agents of the Grievance Commission, who are charged with investigating attorney misconduct, would be artificially narrow.... Indeed, by referring to investigative *or* law enforcement officers, section 2510(7) expresses Congress' clear intent that the phrase is *not* limited to those who enforce criminal law." (Government's Brief at 9; emphasis in original). *See In re Grand Jury 86-3 (Miami),* 673 F.Supp. 1569, 1574 (S.D.Fla.1987) (House Judiciary Committee and its counsel are investigative officers for the purpose of impeachment, and therefore, pursuant to § 2517(1) are entitled to receive Title III information proceeding).

The foregoing analysis under § 2510(6) also satisfies the limitation in § 2517(1) that the contents of the wiretap be disclosed "to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer ... receiving the disclosure." § 2517(1). As amply illustrated here, investigation of criminal misconduct by attorneys, including the commission of federal crimes, is part of the official duties of the MAGC.

■ Petitioner's second major argument is that because Michigan law prohibits eavesdropping, · *see* Mich.Comp. Laws Ann. § 750.539c,[3] and also prohibits disclosure of information obtained by eavesdropping, *see* Mich.Comp.Laws Ann. § 750.539e,[4] it is unlawful for the Grievance Commission to receive the fruits of eavesdropping. There are two basic flaws with this position. First, it confuses the initial interception of conversations with later disclosure. The Grievance Commission did not eavesdrop, the FBI did, but the FBI was authorized under an exception which authorizes eavesdropping by federal agents who are engaged in the performance of their duties. *See* Mich.Comp.Laws

---

3. Mich.Comp.Laws Ann. § 750.539c states:
   Any person who is present or who is not present during a private conversation and who wilfully uses any device to eavesdrop upon the conversation without the consent of all parties thereto ... is guilty of a crime.

4. Mich.Comp.Laws Ann. § 750.539e provides:

   Any person who uses or divulges any information which he knows or reasonably should know was obtained in violation of sections 539b, 539c or 539d is guilty of a felony[.] ...

Ann. § 750.539g.[5] The wiretap at issue did not violate any law. Further, we agree with the district court that "the Michigan statute[ ] [§§ 750.539] cannot be read so broadly as to prohibit disclosure where the plain language addresses the initial interception only." (District Court Op. at 5.)[6]

Secondly, the text of the federal statute clearly envisions receipt of Title III information by state officers. Since, as previously observed, they can be only on the receiving end of the information, to hold that state officers could not receive the information because they could not get it initially under state law would render § 2517(1) meaningless. This we will not do. The history of § 2517(3) also supports this conclusion. Prior to 1970, disclosure of intercepted communications could only be made in connection with state and federal *criminal* proceedings. Congress amended the subsection (3) in that year to allow disclosure in *any* authorized proceeding. Organized Crime Control Act of 1970, Pub.L. No. 91–452, § 902(b), 84 Stat. 947 (1970); *see also* H.R.Rep. No. 91–1549, 91st Congress, 2d Sess. (1970), *reprinted in* 1970 U.S.C.C.A.N. 4007, 4036. We think that the 1970 amendment makes clear that, once conversations are lawfully intercepted, disclosure is not restricted to criminal proceedings.

The district court's judgment ordering the unsealing of Title III information is **AFFIRMED**.

5. Mich.Comp.Laws Ann. § 750.539g states in part:
   Sections 539a to 539f do not prohibit any of the following:
   (a) Eavesdropping or surveillance not otherwise prohibited by law by a peace officer of this state or of the federal government, or the officer's agent, while in the performance of the officer's duties. (West Supp.1994).

6. Although there is no Michigan authority on the admissibility of evidence from electronic surveillance in disciplinary proceedings, in *In re Jen-* *kins*, 437 Mich. 15, 465 N.W.2d 317 (1991), the Michigan Supreme Court suggested in dicta that the state exclusionary rule might not apply to Judicial Tenure Commission proceedings because judicial disciplinary proceedings are "fundamentally distinct" from all other legal proceedings, and are designed not to impose punishment or exact a civil recovery, "but to protect the people from corruption and abuse on the part of those who wield judicial power." *Jenkins*, 465 N.W.2d at 323.