431 F.Supp.2d 544 (2006)
In the Matter of the APPLICATION OF the UNITED STATES of America FOR AN ORDER AUTHORIZING the INTERCEPTION OF WIRE COMMUNICATIONS.
Misc. No. 00-2006-03.
United States District Court, E.D. Pennsylvania.
May 23, 2006.
*545 FINDINGS OF FACT AND CONCLUSIONS OF LAW IN CONNECTION WITH THE APPLICATION FOR THE RELEASE OF INFORMATION
EDUARDO C. ROBRENO, District Judge.
The United States of America has submitted this application for an order authorizing the limited disclosure of information, including the contents of intercepted wire communications, filed under seal in this Title III proceeding, for the limited purpose of assisting the Pennsylvania State Police ("PSP") in the enforcement of the Pennsylvania Race. Horse Development and Gaming Act, 4 Pa.C.S. §§ 1101, et seq., (the "Gaming Act") on behalf of the Pennsylvania Gaming Control Board.
Findings of Fact
1. In 2004, the Pennsylvania Legislature adopted the Gaming Act which provides for the establishment, on a limited basis, of legalized gambling in the Commonwealth of Pennsylvania. The statute also provides for the creation of the Pennsylvania Gaming Control Board to, among other things, oversee and administer the grant of licenses to engage in gambling operations in the Commonwealth.
2. The Gaming Act authorizes the Gaming Control Board to "require background investigations on prospective or existing licensees, permittees or persons holding a controlling interest in any prospective or existing licensee or permittee under the jurisdiction of the Board." 4 Pa.C.S. § 1202(b)(1).
3. The Gaming Act provides that:
The [Gaming Control] Board shall not issue or renew a license or permit unless it is satisfied that the applicant is a person of good character, honesty and integrity, and is a person whose prior activities, criminal record, if any, reputation, habits and associations do not pose a threat to the public interest or the effective regulation and control of slot machine operations or create or enhance the danger of unsuitable, unfair or illegal practices, methods and activities in the conduct of slot machine operations or the carrying on of the business and financial arrangement incidental thereto.
4 Pa.C.S. § 1202(b)(15).
4. The Gaming Act provides for the creation of the Bureau of Investigation & Enforcement ("BIE") to conduct background investigations of operator license applicants, manufacturer license applicants, and key employees of the applicants. The Gaming Act also authorizes the Gaming Control Board to contract with the PSP to conduct background investigations. As part of its background investigation process, the BIE also requests and obtains information from the PSP.
5. By correspondence dated May 1, 2006, the BIE advised the United States Attorney for the Eastern District of Pennsylvania that Mr. X has applied for a gaming license for himself and his company, Mt. Airy # 1, L.C.C. The BIE has requested that the United States Attorney's Office "provide any information in its files which would adversely reflect on Mr. X's[1] good character, honesty, and integrity and potentially preclude him from obtaining a gaming license in the Commonwealth of Pennsylvania."
6. In support of its request, the BIE forwarded a copy of a "Release Authorization" executed by Mr. X in accordance with the Gaming Board regulations. The Release Authorization provides that Mr. X authorizes and requests that:
[E]very Federal, State or local government agency, including, but not limited *546 to, every court, law enforcement agency, criminal justice agency, or probation department, without exception, both foreign and domestic, to whom this release authorization is presented having information relating to or concerning [the applicant] to furnish such information to any duly appointed agent of the Pennsylvania Gaming Control Board whether or not such documents would otherwise be protected from disclosure by any constitutional, statutory, regulatory, or common law privilege.
The Release Authorization authorizes any law enforcement agency "to make full and complete disclosure of any and all information on file or available concerning the [applicant]." The Release Authorization further provides that Mr. X releases any claim or potential claim he may have against any law enforcement agency or court arising out the disclosure of information made in connection with the Release Authorization.
7. Before the BIE submitted its written request to the USAO, the PSP had advised the government that Mr. X had applied for a gaming license and requested information relating to Mr. X in connection with his background investigation.[2]
8. During the course of this Title III investigation of this case, the Court granted an original authorization order and twelve extension orders, authorizing government agents to intercept certain wire communications. In accordance with 18 U.S.C. 4, 2518(8)(b), the Court ordered that the applications, supporting affidavits, orders, progress reports, inventories and related documents be filed and maintained under seal. In accordance with 18 U.S.C. § 2518(8)(a), the Court ordered that the original digital recordings of intercepted wire communications be filed with the Clerk of the Court and maintained under seal.
9. Mr. X was named an Interceptee in the authorization orders entered by the Court in this Title III matter. The FBI has personally served Mr. X with an inventory, notifying him of the electronic monitoring conducted in this case.
Conclusions of Law
10. Title III provides for the disclosure and use of information relating to intercepted communications, including the contents of intercepted communications, for law enforcement purposes. See 18 U.S.C. § 2517. Pursuant to § 2517(1), any investigative or law enforcement officer is authorized to disclose the contents of intercepted wire communications to any other investigative or law enforcement officer "to the extent such use is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure." 18 U.S.C. § 2517(1). Pursuant to § 2517(2), any investigative or law enforcement officer is authorized to use the contents of intercepted wire communications "to the extent such use is appropriate to the proper performance of his official duties." 18 U.S.C. § 2517(2). Pursuant to § 2517(3), any person may disclose the contents of intercepted wire communications, and any evidence derived from intercepted communications, "while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof." 18 U.S.C. § 2517(3). Pursuant to 18 U.S.C. § 2517(5), any investigative officer may use and disclose the contents of intercepted wire communications and evidence derived from intercepted *547 wire communications relating to offenses not specified in the authorization order, in accordance with § 2517(1) and § 2517(2). Section 2517(5) further provides that:
Such contents and any evidence derived therefrom may be used under subsection (3) of this section when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of [Title III]. Such application shall be made as soon as practicable.
18 U.S.C. § 2517(5).
11. The term "investigative or law enforcement officer" means any federal or state officer authorized to conduct investigations or to make arrests for the offenses enumerated under Title III. 18 U.S.C. § 2510(7). Under 18 U.S.C. § 2516(1), the offenses enumerated under Title III for which authorization to intercept wire and oral communications may be granted include state law offenses such as murder, extortion, bribery, gambling, drug trafficking, and kidnaping, which are incorporated as part of federal offenses such racketeering 18 U.S.C. § 1962, money laundering, 18 U.S.C. § 1956, and interstate travel in aid of racketeering, 18 U.S.C. § 1952. The PSP is an investigative or law enforcement officer to whom information may be disclosed.
12. Pursuant to 18 U.S.C. § 2518(8)(b), applications and orders sealed by the Court may be disclosed upon a showing of good cause.
13. In this case, this limited disclosure constitutes good cause under § 2518(8)(b) and is consistent with the disclosure provisions of § 2517. See, e.g., In re Electronic Surveillance, 49 F.3d 1188 (6th Cir.1988); In Re: Grand Jury Proceedings, 841 F.2d 1048 (11th Cir.1988).
Conclusion
14. For the foregoing reasons, the Court will grant the application of the United States for a limited disclosure order.
15. In the event that the PSP determines that the Title III information relating to Mr. X is relevant to the scope of the BIE's background investigation and should be disclosed to the BIE, the government must apply for an additional limited disclosure setting forth the terms and conditions upon which the Title III information may be disclosed to and used by the BIE. An appropriate Order follows.

LIMITED DISCLOSURE ORDER
AND NOW, this 22nd day of May 2006, upon application of the United States for a limited disclosure order, it is hereby ODERED that the application is GRANED.
In granting the government's application, the Court finds that good cause exists under 18 U.S.C. §§ 2517 and 2518(8)(b) for the limited disclosure of information, including the contents of intercepted communications and copies of documents filed under seal in this Title III matter, namely, that the Pennsylvania State Police ("PSP") may review the information to determine whether it is relevant to the scope of a background investigation of a gambling license applicant being conducted on behalf of the Pennsylvania Gaming Control Board pursuant to the Pennsylvania Race Horse Development and Gaming Act, 4 Pa.C.S. §§ 1101, et seq., (the "Gaming Act").
ACCORDINGLY, IT IS ORDERED AND DECREED that
1. The government may disclose to the PSP and its authorized officers, troopers, supervisors and agents, information filed under seal in this Title III matter, including the contents of intercepted communications, *548 relating to Mr. X and his activities, to the extent necessary to enable the PSP to discharge their law enforcement duties under the Gaming Act in connection with background investigations of applicants on behalf of the Gaming Control Board. This Order does not apply to the original digital recordings filed under seal in this matter, which shall not be unsealed at this time.
2. The PSP may make such use of the Title III materials as is necessary to perform its law enforcement duties under the Gaming Act. The PSP may not use the Title III materials for any other purpose, and may not disclose the Title III materials or information contained in the Title III materials to any third party. The government is authorized to make copies of the sealed communications and related documents available for the PSP. A copy of this Limited Disclosure Order shall be provided to the PSP.
3. In the event that the PSP determines that the Title III information is relevant to the scope of the background investigation, the government may apply for a supplemental limited disclosure regarding the disclosure of the Title III information to the Gaming Control Board and its authorized agents.
4. Except for the limited disclosure authorized by this Order, the Clerk of the Court shall continue to maintain the applications, including the government's application for limited disclosure order, supporting affidavits, orders, progress reports, inventories, related documents and docket entries, and magnetic optical discs previously filed in this matter under seal.
NOTES
[1] The original order contains the name of the applicant and has been filed under seal.
[2] In its original application, the government mistakenly represented that the PSP were conducting the background investigation of Mr. X. The PSP has clarified that it has been tasked to gather information on behalf of the BIE, but the BIE is responsible for completing the background investigation of Mr. X.